# UNITED STATES DISTRICT COURT

for the

## Eastern District of Michigan

| | |
|---|---|
| TERENCE D. LEAVY, BEVERLY BIGGS-LEAVY, JEDEDIAH BROWN, and JOHN GROFF<br>*Plaintiffs,*<br><br>  **-v-**<br><br>SHELDON A. NEELEY, TERENCE GREEN, MICHAEL TISDALE, OFFICER JONES, and OFFICER J. BRYANT in their official and individual capacities,<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No._____<br><br><br>**COMPLAINT AND JURY DEMAND** |

## CIVIL ACTION

*This action alleges, inter alia, violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, arising from the unlawful arrest, unreasonable seizure of property, and selective enforcement of laws during a public protest in Flint, Michigan—thereby infringing upon the constitutional rights of Plaintiffs as protected by the aforementioned provisions.*

Plaintiffs TERENCE D. LEVY, BEVERLY BIGGS-LEAVY, JEDEDIAH BROWN, and JOHN GROFF, by and through their attorneys, Lento Law Group, P.C., and by way of Complaint, bring this action for damages and other equitable relief against Defendants, SHELDON A. NEELEY, TERENCE GREEN, MICHAEL TISDALE, OFFICER JONES, and OFFICER J. BRYANT in their official and individual capacities, alleging as follows:

## INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. §§ 1983, 1985, and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution, seeking redress

for the unlawful, retaliatory, and discriminatory actions taken by law enforcement officials and city leadership in Flint, Michigan, against Plaintiffs engaged in peaceful political expression and public assembly.

2.      On June 1, 2025, Plaintiffs participated in a constitutionally protected protest and religious gathering in Flint, Michigan, organized to address issues of public concern. Despite the peaceful nature of the event, Defendants—acting under color of law and in coordination with one another—engaged in a pattern of selective enforcement, excessive force, and retaliatory conduct aimed at suppressing dissent and intimidating individuals associated with political opposition to the current city administration.

3.      Among those targeted were Plaintiff Jedidiah Brown, a Chicago-based activist and protest organizer with a history of conflict with Flint officials, and Plaintiff Beverly Biggs-Leavy, a Flint City Council candidate who had recently defeated the incumbent mayor's endorsed candidate in a contentious election. Law enforcement officers, including supervisory personnel such as Sergeant Michael Tisdale, executed enforcement actions that deviated from standard procedures, including the towing of vehicles without citation, the violent detention of Plaintiff Terrance Leavy, and the issuance of citations bearing Sergeant Tisdale's name—all of which were directed at individuals closely associated with Plaintiffs Brown and Biggs-Leavy.

4.      This action seeks to hold Defendants accountable for their abuse of authority, violation of clearly established constitutional rights, and coordinated efforts to chill political expression and civic participation through intimidation, coercion, and unlawful use of force.

## JURISDICTION AND VENUE

5.      This is a civil action for damages brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, to redress the deprivation of rights secured by the First and Fourteenth Amendments to the United States Constitution. At all relevant times, Defendants acted under color of state law

and in violation of Plaintiffs' clearly established constitutional rights.

6.      This Court has original subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1343.

7.      This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to the claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

8.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as, upon information and belief, all Defendants reside in this district and the events giving rise to Plaintiff's claims as complained of herein occurred within this district.

## PARTIES

9.      At all times relevant hereto, Plaintiff JEDEDIAH BROWN, is, upon information and belief, an adult resident citizen of the County of Dallas, State of Texas, with a residential address believed to be 3000 Bardin Road, Grapevine, Texas 75052.

10.     At all times relevant hereto, Plaintiff TERENCE D. LEAVY, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan.

11.     At all times relevant hereto, Plaintiff BEVERLY BIGGS-LEAVY, is, upon information and belief, a Flint city council candidate and an adult resident citizen of the County of Genesee, State of Michigan.

12.     At all times relevant hereto, Plaintiff JOHN GROFF, is, upon information and belief, an adult resident citizen of the County of Camden, State of New Jersey.

13.     At all times relevant hereto, Defendant SHELDON A. NEELEY, the mayor of Flint City, Michigan is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an employment address for service of process believed to be 1101 S. Saginaw Street, Flint, Michigan, 48502. Said Defendant is sued in both his official and individual

capacity.

14.     At all times relevant hereto, Defendant TERENCE GREEN, the Flint, Michigan Chief of Police, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with a with an employment address for service of process believed to be 210 E. 5th Street, Flint, Michigan, 48502. Said Defendant is sued in both his official and individual capacity.

15.     At all times relevant hereto, Defendant OFFICER J. BRYANT, a police officer with the Flint City Police Department, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an employment address for service of process believed to be 210 E. 5th Street, Flint, Michigan, 48502. Said Defendant is sued in both his official and individual capacity.

16.     At all times relevant hereto, Defendant MICHAEL TISDALE, a police sergeant with the Flint City Police Department, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an employment address for service of process believed to be 210 E. 5th Street, Flint, Michigan, 48502. Said Defendant is sued in both his official and individual capacity.

17.     At all times relevant hereto, Defendant OFFICER JONES, a female police officer with the Flint City Police Department, is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with an employment address for service of process believed to be 210 E. 5th Street, Flint, Michigan, 48502. Said Defendant is sued in both her official and individual capacity.

18.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the

4

true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

17.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

18.     Upon information and belief, Sheldon Neeley, the Mayor of the City of Flint, Michigan, placed a phone call to Maurice Davis, a former Flint City Council member, in advance of the planned public assembly. The protest was scheduled to occur on or near property owned by Mr. Davis on Dayton Street in Flint. During this conversation, Mayor Neeley allegedly warned Mr. Davis that if the protest "goes down," there would be "consequences." This statement, made by a sitting mayor in reference to a constitutionally protected public demonstration, constitutes a clear attempt to intimidate and suppress lawful political expression and raises serious concerns about the misuse of governmental authority to deter civic engagement and dissent.

19.     On or about June 1, 2025, a bus carrying Christian activists from Chicago arrived at a church in Flint, Michigan, where they were joined by local residents for a peaceful Sunday service. The service included spiritual songs performed by a choir and sermons delivered by pastors and other religious leaders.

20.     Following the service, the group traveled to Flint City Hall, where they were met by activist Jedidiah Brown's team and received instructions for a peaceful protest walk. The group began walking north on Saginaw Street, accompanied by approximately a dozen vehicles transporting individuals unable to walk.

21.     The protest organizer did not obtain a permit as required by Flint Ordinance § 42-4. The organizer, Jedidiah Brown, had a documented history of conflict with city officials, including prior arrests, public condemnation by elected officials, and pending litigation against the Flint Police Chief. These circumstances would have exacerbated the city's unwillingness to

5

issue a permit or otherwise facilitate the peaceful and public protest.

22.     Approximately ten minutes into the walk, a female police officer approached the line of vehicles and instructed the drivers to activate their hazard lights and continue moving, stating, "I'm going to tell you what to do—you want to put your hazards on and keep moving." Plaintiff John Groff complied and moved his vehicle forward.

23.     Within two blocks, the procession came to a stop. Mr. Groff was approached again by the same officers, who accused him of impeding traffic. When questioned, Officer J. Bryant (Badge #909, Flint Police Car 2726) stated that he was acting on the direct instruction of the Chief of Police to tow Mr. Groff's vehicle for allegedly impeding traffic.

24.     Officer J. Bryant then ordered Plaintiff Groff and his passengers to exit the vehicle so that it could be towed, rather than issuing a citation, which is the standard and less intrusive enforcement mechanism for this level of alleged traffic infraction. This departure from typical procedure raises questions about the necessity and proportionality of the enforcement action taken against Plaintiff Groff.

25.     Upon information and belief, the directive to tow Plaintiff Groff's vehicle originated from Defendant Terence Green, Chief of Police for the City of Flint. This directive was issued despite the availability of less intrusive enforcement alternatives and in the absence of any immediate public safety threat. Notably, Chief Green is a named defendant in a separate, ongoing civil rights action involving Plaintiffs Groff and Brown, further underscoring the retaliatory and targeted nature of the enforcement actions taken during the protest. The involvement of Chief Green in both matters raises serious concerns about abuse of authority, personal animus, and the use of official power to intimidate and retaliate against individuals engaged in constitutionally protected activity.

26.     Moments later, the officers were called down the block in response to a call for

6

assistance. Within approximately one-minute, multiple Flint Police Department vehicles and five Michigan State Police cruisers arrived on Saginaw Street, indicating a coordinated and pre-staged law enforcement response.

27.    Shortly thereafter, approximately five officers forcefully extracted Plaintiff Terrance Leavy from his vehicle. As they pulled him from the driver's seat, the vehicle—still in drive—began to move forward, creating a potentially hazardous situation. At the time of the extraction, Mr. Leavy's vehicle was positioned adjacent to the curb, not obstructing traffic or occupying the main roadway. This aggressive and unnecessary escalation by law enforcement, despite the absence of any immediate threat or traffic obstruction, further illustrates the excessive and disproportionate nature of the force used against Mr. Leavy.

28.    Plaintiff Terrance Leavy was never informed of the reason he was ordered to exit his vehicle, nor was he advised of the grounds for his detention and handcuffing, despite repeatedly asking the female officer for clarification. The lack of explanation and abrupt nature of the arrest underscore the arbitrary and potentially retaliatory character of the enforcement action. It is particularly significant that Mr. Leavy is the husband of City Council candidate Beverly Biggs-Leavy, who had recently prevailed over the incumbent mayor's endorsed candidate in a contentious preliminary election—raising further concerns that the arrest was politically motivated and intended to intimidate or retaliate against individuals associated with political opposition.

29.    During his detention, Plaintiff Terrance Leavy was violently thrown to the ground and physically restrained by multiple officers before being placed into a police vehicle. At no point during this encounter was Mr. Leavy clearly informed of the reason for his arrest, despite his repeated inquiries. It was only upon his subsequent release that he was issued citations alleging impeding traffic and interfering with, resisting, or assaulting a police officer during a lawful

arrest. The delayed issuance of these charges, coupled with the excessive use of force, further supports the inference that Mr. Leavy's arrest was not based on legitimate law enforcement objectives but rather served as a retaliatory and intimidating act.

30.    It should be noted that Plaintiff Terrance Leavy was not formally arrested and was ultimately released at the scene without being transported or booked. Despite this, the Flint police officer escalated what could have been a routine traffic matter by ordering Mr. Leavy out of his vehicle without explanation, refusing to respond to his repeated and reasonable inquiries regarding the basis for the order, and then forcefully handcuffing him in public view. This disproportionate response appears to have been motivated not by any legitimate law enforcement concern, but by Mr. Leavy's association with his wife, Beverly Biggs-Leavy—a prominent candidate in a highly contested City Council race that had garnered national attention and triggered multiple civil rights lawsuits against the City of Flint and its police department. The timing and nature of the encounter strongly suggest that Mr. Leavy was targeted for intimidation due to his political affiliations and perceived opposition to the current administration.

31.    As a direct result of the excessively forceful and violent manner in which he was extracted from his vehicle and detained, Plaintiff Terrance Leavy sustained physical injuries that required medical evaluation and treatment. The unnecessary use of force by law enforcement officers not only caused Mr. Leavy physical harm but also compounded the emotional and psychological distress resulting from the public and unjustified nature of the encounter.

32.    Following Mr. Leavy's violent detention, two rollback tow trucks arrived on the scene and towed the vehicles belonging to Mr. Leavy and John Groff. Notably, out of all the vehicles participating in the procession, only these two were towed.

33.    The impounding of the Groff vehicle was also improper, as it was not posing any public safety danger.  Upon information and belief, Mr. Groff was targeted by the defendants

because of his association with Ms. Biggs-Leavy, a Flint City Council candidate who had recently defeated the incumbent mayor's endorsed candidate in a contentious election.

34.     Rather than dispersing the protest, law enforcement officers instructed participants to vacate the roadway and continue their demonstration from the adjacent sidewalk, thereby implicitly acknowledging the peaceful nature of the assembly and permitting its continuation in a modified form.

35.     Defendant Michael Tisdale, a sergeant and supervisory officer with the Flint Police Department, was present at the public assembly on June 1, 2025, and directly involved in the enforcement actions taken against assembly participants. Upon information and belief, Sergeant Tisdale's name appears on the citations issued to Plaintiff Terrance Leavy, indicating his supervisory role in authorizing or overseeing the arrest and related enforcement decisions.

36.     The decision by law enforcement to tow only the vehicles belonging to Plaintiff John Groff and Beverly Biggs-Leavy—despite the presence of numerous similarly situated vehicles participating in the same procession—constitutes a clear instance of selective enforcement. This targeted action, taken without issuing citations or providing prior warnings, deviated from standard traffic enforcement practices and was executed in a manner designed to intimidate and suppress the Plaintiffs' lawful exercise of their constitutional rights. Such conduct reflects an abuse of governmental authority and a deliberate attempt to chill protected speech and assembly through coercive and punitive measures.

**COUNT I**
**VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)**
**(Against All Individual Defendants in Their Individual Capacities)**

37.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

38.     The First Amendment to the United States Constitution provides as follows:

9

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

39.    As incorporated against the States through the Due Process Clause of the Fourteenth Amendment, the First Amendment guarantees individuals the right to free speech and peaceful assembly, including the right to access and express themselves in traditional public forums such as streets, sidewalks, and parks.

40.    Plaintiffs exercised their constitutionally protected rights to free speech and peaceful assembly by organizing and participating in a nonviolent protest in Flint, Michigan, on June 1, 2025. The demonstration was intended to express concerns regarding civil rights, governmental accountability, and social justice—issues of significant public interest.

41.    Plaintiffs and other participants conducted themselves lawfully and respectfully throughout the event. Their actions fall squarely within the protections afforded by the First Amendment to the United States Constitution, as incorporated against the States through the Fourteenth Amendment.

42.    Defendants, acting under color of state law, intentionally and unlawfully interfered with Plaintiffs' exercise of their First Amendment rights by engaging in a coordinated campaign of intimidation and suppression. This included the issuance of threats by the Mayor of Flint warning of "consequences" should the protest proceed, the selective towing of vehicles associated with protest organizers, the use of excessive and unjustified force against peaceful participants, and the arbitrary enforcement of traffic laws. These actions were not motivated by legitimate public safety concerns but were instead designed to deter, punish, and chill Plaintiffs' constitutionally protected speech and assembly.

43.    Defendants' actions—including the issuance of threats, the selective enforcement of traffic laws, the towing of vehicles associated with protest organizers, and the use of force

against peaceful demonstrators—were undertaken with the specific intent to suppress Plaintiffs' exercise of their First Amendment rights to free speech and peaceful assembly. These intimidation tactics were not content-neutral, nor were they justified by any legitimate governmental interest. Rather, they were designed to deter Plaintiffs and others from engaging in protected political expression and to punish them for their perceived opposition to local government officials.

44.     These actions were undertaken in direct retaliation for Plaintiffs' political expression, affiliations, and prior litigation against the City of Flint and its officials. Plaintiffs' involvement in public advocacy, their association with political candidates opposing the current administration, and their participation in ongoing civil rights lawsuits made them targets for punitive and discriminatory treatment. Defendants' conduct was intended to silence dissent, discourage civic engagement, and punish Plaintiffs for exercising their constitutional rights.

45.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiffs suffered significant harm, including physical injuries, emotional distress, reputational damage, and the chilling of their constitutional rights. The excessive use of force, public humiliation, and targeted enforcement actions inflicted lasting psychological trauma and deterred Plaintiffs from future participation in protected political expression and public demonstrations.

## COUNT II
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (42 U.S.C. § 1985)

46.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

47.     Plaintiffs attempted to exercise their constitutionally protected rights to free speech and peaceful assembly by organizing and participating in a nonviolent protest in Flint, Michigan, on June 1, 2025. The demonstration was intended to express concerns regarding civil rights, governmental accountability, and social justice—issues of significant public interest.

48.     As the Sixth Circuit opined in <u>Taylor v. Streicher</u>, 465 Fed. Appx. 414, 419 (6th Cir. 2012), the elements of a claim arising under 42 U.S.C. § 1985 are, "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." (quoting, <u>White v. Trapp</u>, 93 F. Appx. 23, 26 (6th Cir. 2004)).

49.     A plaintiff making a claim under 42 U.S.C. § 1985 must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." <u>Bartell v. Lohiser</u>, 215 F.3d 550, 559-60 (6th Cir. 2000).

50.     At all times relevant hereto, the Defendants named in this Count conspired so as to deprive Plaintiff of the equal protection of the laws, specifically, Plaintiff's rights as arising under the First Amendment, as alleged more completely in Count I herein, and which Plaintiff specifically incorporates in its entirety by reference.

51.     The Defendants named in this Count acted in furtherance of a conspiracy to suppress constitutionally protected expression by targeting Plaintiffs during a peaceful public assembly. This included the mayor's prior threat of "consequences" should the protest proceed, which served as a clear attempt to intimidate and deter civic participation. The conspiracy was further advanced by law enforcement officers who, acting under color of state law, engaged in selective enforcement, excessive force, and arbitrary vehicle seizures directed specifically at individuals associated with political opposition. These coordinated actions were not based on legitimate law enforcement objectives but were instead motivated by animus and a desire to retaliate against Plaintiffs for exercising their First Amendment rights.

52.     By engaging in the conduct described above, these Defendants, acting under color of state law, deprived Plaintiffs of rights secured by the First Amendment to the United States

12

Constitution, including the rights to free speech, peaceful assembly, and freedom from retaliation for protected expression. These violations are more fully articulated in Count I of this Complaint and form part of a broader pattern of unconstitutional conduct aimed at suppressing dissent and punishing political opposition.

53.     Given the history of the Council – specifically, the great deal of public animosity between the Defendants named in this Count and the community activists supporting Third Ward candidate Biggs-Leavy – it is clear that the conspiracy was discriminatorily motived by Plaintiff's political affiliation given the Defendants' knowledge that Plaintiffs were associated with Ms. Biggs-Leavy and her legal team.

54.     During Plaintiff Terrance Leavy's forced and unlawful extraction from his vehicle, law enforcement officers failed to provide any lawful justification for their actions and used excessive force in a manner that was both unnecessary and retaliatory. Despite the absence of any immediate threat or obstruction, officers violently removed Mr. Leavy from his vehicle, restrained him in public view, and subjected him to physical harm. Other officers present at the scene stood by and allowed the unjustified and disproportionate use of force to proceed without intervention, thereby compounding the violation of Mr. Leavy's civil rights and contributing to the physical and emotional harm he sustained.

55.     The targeted towing of vehicles belonging to Plaintiffs John Groff and Terrance Leavy was unwarranted, retaliatory, and devoid of any legitimate law enforcement justification. At the time of the incident, both Plaintiffs were inside their vehicles with hazard lights activated, in full compliance with prior instructions given by law enforcement officers. Their vehicles were not obstructing traffic, nor were they creating any public safety hazard. Despite this, officers singled out their vehicles for removal, while allowing similarly situated vehicles participating in the same procession to remain undisturbed. This selective enforcement, carried out without citation

or warning, reflects a deliberate effort to intimidate and penalize Plaintiffs for their participation in the protest and their perceived political affiliations, in violation of their constitutional rights.

56.     It is evident that Defendants specifically and deliberately targeted Plaintiffs during the public assembly on June 1, 2025, while other individuals engaged in similar conduct—such as picketing, recording, and participating in the demonstration—were not subjected to comparable treatment. Plaintiffs were singled out because of their known political affiliations, their vocal criticism of local government corruption, and their efforts to document the conduct of city officials and law enforcement. This selective and discriminatory enforcement of the law, absent any legitimate justification, constitutes a clear violation of Plaintiffs' constitutional rights. It reflects an intentional effort to suppress dissenting voices and to retaliate against individuals engaged in protected political expression and oversight of public officials.

57.     By engaging in a coordinated effort to intimidate, target, and suppress Plaintiffs during a peaceful public assembly, Defendants violated 42 U.S.C. § 1985(3). Defendants conspired to deprive Plaintiffs of their constitutional rights—specifically, their rights to free speech, peaceful assembly, and equal protection under the law—by issuing threats, selectively enforcing laws, using excessive force, and targeting Plaintiffs for punitive action based on their political views and affiliations. Acts taken in furtherance of this conspiracy, including the towing of vehicles and the violent detention of Plaintiff Terrance Leavy, resulted in the unjust deprivation of Plaintiffs' constitutional rights and caused them significant physical, emotional, and reputational harm.

### COUNT III
### RETALIATION FOR PROTECTED ACTIVITY
**(42 U.S.C. § 1983 – Against All Individual Defendants in Their Individual Capacities)**

58.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

59.     Plaintiffs attempted to exercise their constitutionally protected rights to free speech

and peaceful assembly by organizing and participating in a nonviolent protest in Flint, Michigan, on June 1, 2025. The demonstration was intended to express concerns regarding civil rights, governmental accountability, and social justice—issues of significant public interest.

60.     Plaintiffs engaged in protected activity under the First Amendment, including political speech, peaceful protest, and participation in litigation challenging the conduct of public officials. Their actions were directed at expressing opposition to perceived governmental misconduct, advocating for civil rights, and holding local authorities accountable. These forms of expression lie at the core of constitutional protections and are essential to a functioning democracy.

61.     Defendants' actions—including the issuance of threats, unwarranted arrests, use of excessive force, and selective enforcement of laws—were undertaken in direct response to Plaintiffs' engagement in constitutionally protected activity. These actions were motivated by a desire to deter, punish, and silence Plaintiffs for their political speech, public protest, and legal advocacy. Such conduct constitutes unlawful retaliation and represents a deliberate effort to suppress dissent and chill the exercise of fundamental rights guaranteed by the First and Fourteenth Amendments.

62.     Such retaliatory conduct by Defendants constitutes a violation of the First and Fourteenth Amendments to the United States Constitution. By targeting Plaintiffs for engaging in protected speech and assembly, and by using state authority to punish and deter that expression, Defendants infringed upon rights that lie at the core of constitutional protections and are essential to democratic participation.

63.     As a direct and proximate result of Defendants' unconstitutional retaliation, Plaintiffs suffered substantial damages, including physical injuries, emotional distress, reputational harm, and the deprivation of their civil liberties. These injuries were foreseeable consequences of Defendants' unlawful conduct and have caused lasting harm to Plaintiffs' well-

being, dignity, and ability to engage in future protected activity without fear of reprisal.

## COUNT IV
## EXCESSIVE FORCE
### (42 U.S.C. § 1983 – Against All Individual Defendants in Their Individual Capacities)

64.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

65.     Plaintiffs attempted to exercise their constitutionally protected rights to free speech and peaceful assembly by organizing and participating in a nonviolent protest in Flint, Michigan, on June 1, 2025. The demonstration was intended to express concerns regarding civil rights, governmental accountability, and social justice—issues of significant public interest.

66.     Plaintiff Terrance Leavy was subjected to excessive and objectively unreasonable force in violation of the Fourth and Fourteenth Amendments when he was forcibly removed from his vehicle, thrown to the ground, and handcuffed without any lawful justification. At the time of the incident, Mr. Leavy posed no threat to officer safety, was not obstructing traffic, and had complied with prior police instructions. The force used against him was grossly disproportionate to the circumstances and constituted an unlawful seizure under clearly established constitutional standards.

67.     The force used against Plaintiff Terrance Leavy was not objectively reasonable under the circumstances and constituted a clear violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. At no point did Mr. Leavy pose a threat to officer safety, resist lawful commands, or engage in conduct warranting such a violent response. The actions of the officers were excessive, unjustified, and contrary to clearly established legal standards governing the use of force by law enforcement.

68.     Defendants, acting under the direction of Defendant Terence Green and in their capacity as licensed and visibly armed law enforcement officers, unlawfully assaulted Plaintiff

16

Terrance Leavy by subjecting him to unnecessary and excessive physical force.

69.     Despite Plaintiff's compliance and the absence of any threat or obstruction, officers forcibly removed him from his vehicle, threw him to the ground, and handcuffed him in public view. This aggressive and unjustified use of force, carried out during a peaceful public assembly, lacked any lawful basis and constituted a clear violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution. The conduct was not only excessive but also intended to intimidate and punish Plaintiff for his expressive activity and political associations.

70.     Defendants approached Plaintiff Terrance Leavy and, without legal justification, intentionally and unlawfully threatened to forcibly remove him from his vehicle, despite the fact that he was lawfully parked adjacent to the curb and in full compliance with all applicable traffic laws. Plaintiff had activated his hazard lights in accordance with prior police instructions and posed no threat to public safety or traffic flow. The threat of forcible removal, made in the absence of any legitimate basis, constituted an act of intimidation and a violation of Plaintiff's constitutional rights.

71.     The threat issued by Defendants occurred under circumstances that reasonably instilled in Plaintiff Terrance Leavy a well-founded and immediate fear of physical harm. This fear was heightened by the Defendants' armed presence, their aggressive and confrontational demeanor, and the disproportionate show of force directed at a peaceful protest. As an unarmed African American male, Plaintiff's apprehension was further intensified by his awareness of numerous prior incidents involving police violence against citizens in Flint, Michigan. These contextual factors underscore the deliberate nature of the intimidation, and the abuse of authority exercised by Defendants, which served not only to threaten Plaintiff's physical safety but also to suppress his lawful participation in constitutionally protected activity.

72.     Given the Defendants' positions of authority, their visible armament, and the coercive nature of their conduct, undertaken outside the bounds of lawful authority, the Defendants possessed both the apparent and immediate capacity to carry out their threats unless restrained. Their actions constituted a clear abuse of power and instilled in Plaintiff Leavy a reasonable and well-founded fear of imminent harm.

73.     As a direct result of the foregoing circumstances—including the Defendants' aggressive posture, lack of lawful justification, and coordinated show of force—Plaintiff Leavy reasonably apprehended that he was at imminent risk of physical harm. This apprehension was not speculative; it was realized when officers, without warning or legal cause, forcibly extracted him from his lawfully parked vehicle, threw him to the ground, and physically restrained him. These actions constituted an unprovoked and unlawful assault, carried out under color of authority but in clear violation of Plaintiff Leavy's constitutional rights.

74.     As a direct and proximate result of the Defendants' actions—specifically, the excessive and unjustified use of force during Plaintiff Leavy's forcible extraction from his lawfully standing vehicle—Plaintiff sustained physical injuries requiring medical evaluation and treatment. At the time of the incident, Plaintiff was unarmed, complying with all traffic laws, and peacefully exercising his First Amendment rights on a public street. Despite posing no threat to public safety or law enforcement, Plaintiff was subjected to aggressive and unnecessary physical contact by Defendants acting outside the scope of lawful authority. This indiscriminate and disproportionate use of force not only caused immediate bodily harm but also placed Plaintiff at serious risk of further injury, compounding the physical, emotional, and psychological impact of the encounter.

75.     The assault inflicted upon Plaintiff Leavy resulted not only in physical trauma but also in a profound and well-founded fear of imminent bodily harm, given the Defendants' armed presence, authoritative posture, and demonstrated pattern of aggressive conduct. This incident

occurred in the context of Plaintiff's lawful participation in a constitutionally protected public assembly, where he was peacefully expressing his political views. The Defendants' actions—executed without legal justification—constituted an overt attempt to intimidate and suppress Plaintiff's exercise of his First Amendment rights. As a result, Plaintiff suffered physical pain, emotional distress, and a chilling effect on his ability to engage in public discourse without fear of retaliation or violence by state actors.

<u>COUNT V</u>
**SELECTIVE ENFORCEMENT / EQUAL PROTECTION VIOLATION**
**(42 U.S.C. § 1983 – Against All Individual Defendants)**

76.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

77.     Plaintiffs attempted to exercise their constitutionally protected rights to free speech and peaceful assembly by organizing and participating in a nonviolent protest in Flint, Michigan, on June 1, 2025. The demonstration was intended to express concerns regarding civil rights, governmental accountability, and social justice—issues of significant public interest.

78.     Defendants willfully and selectively enforced traffic laws by targeting only the vehicles associated with Plaintiffs John Groff and Terrance Leavy, despite the presence of numerous other similarly situated vehicles participating in the same peaceful protest procession. Notably, no citations or warnings were issued to the other vehicles, and only the vehicles linked to individuals with known political affiliations or pending litigation against city officials were towed. This selective enforcement occurred in the absence of any legitimate public safety concern and deviated from standard traffic enforcement practices.

79.     The decision to tow only the vehicles of Plaintiffs Groff and Leavy—despite the presence of numerous other vehicles participating in the same protest procession—was not based on any objective or neutral enforcement criteria. No warnings were issued, no traffic citations were

provided at the time of the alleged infractions, and no evidence was presented that Plaintiffs' vehicles posed a greater obstruction or safety risk than others. The absence of uniform enforcement, coupled with the Defendants' knowledge of Plaintiffs' political affiliations and prior protected activity, supports a strong inference that the enforcement actions were motivated by animus and intended to punish Plaintiffs for their expressive conduct.

80.     The timing, context, and identities of the individuals targeted strongly suggest that the enforcement actions were not neutral or routine, but rather retaliatory in nature—intended to intimidate and punish Plaintiffs for their participation in constitutionally protected activity and their association with political opposition to the current administration.

81.     Furthermore, the involvement of high-ranking officials—including the Chief of Police, who was a named defendant in pending civil rights litigation involving the Plaintiffs—demonstrates that the enforcement decisions were not isolated or discretionary acts by individual officers, but rather part of a coordinated and targeted response. The timing of the protest, the political context surrounding Plaintiff Leavy's spouse's electoral victory over the mayor's endorsed candidate, and the prior history of conflict between Plaintiff Groff's associates and city officials all point to a retaliatory motive. These facts, taken together, establish a pattern of selective enforcement designed to suppress dissent and chill constitutionally protected expression, in violation of the Equal Protection Clause and 42 U.S.C. § 1983.

82.     The selective enforcement of traffic laws against Plaintiffs Groff and Leavy was not incidental or neutral, but rather rooted in their political affiliations and prior engagement in constitutionally protected activity. Plaintiff Leavy's association with a City Council candidate who had recently defeated the incumbent mayor's endorsed candidate, and Plaintiff Groff's participation in a protest led by an activist with ongoing litigation against city officials, underscore the retaliatory motive behind the enforcement actions. This discriminatory treatment, in the

absence of any legitimate enforcement rationale and in stark contrast to the treatment of similarly situated individuals, constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.

83.    As a direct and foreseeable result of Defendants' discriminatory and retaliatory conduct, Plaintiffs Groff and Leavy suffered tangible and intangible harm. This harm includes, but is not limited to, physical injury, emotional distress, reputational damage, and the deprivation of their constitutional rights to equal protection, free speech, and peaceful assembly. The targeted enforcement actions—executed in a public and humiliating manner—caused Plaintiffs to experience fear, anxiety, and a chilling effect on their willingness to engage in future civic and political expression. These injuries are not only personal but also represent a broader threat to democratic participation and the rule of law.

## COUNT VI
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (42 U.S.C. § 1985 – Against All Individual Defendants)

84.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

85.    Plaintiffs attempted to exercise their constitutionally protected rights to free speech and peaceful assembly by organizing and participating in a nonviolent protest in Flint, Michigan, on June 1, 2025. The demonstration was intended to express concerns regarding civil rights, governmental accountability, and social justice—issues of significant public interest.

86.    Upon information and belief, Defendants engaged in pre-event planning and communication regarding the protest, including directives from senior officials such as Mayor Neeley and Chief Green. The rapid deployment of multiple law enforcement units, the synchronized actions taken against Plaintiffs, and the absence of enforcement against other participants all point to a coordinated effort to suppress the protest. These facts, combined with

the political context and prior conflicts between Plaintiffs and city officials, support the inference of a shared conspiratorial objective to deprive Plaintiffs of their civil rights in violation of 42 U.S.C. § 1985(3).

87.     Upon information and belief, Defendants knowingly and willfully conspired, through coordinated actions and communications, to deprive Plaintiffs of their civil rights secured by the Constitution, including their rights to free speech, peaceful assembly, and equal protection under the law. This agreement among Defendants—evidenced by the targeted enforcement actions, the timing of the protest response, and the involvement of high-ranking officials—was motivated by discriminatory animus toward Plaintiffs' political affiliations and protected expressive conduct. The overt acts taken in furtherance of this conspiracy, including the selective towing of vehicles, the use of excessive force, and the arbitrary detention of protest participants, directly resulted in the deprivation of Plaintiffs' constitutional rights and caused them significant harm.

88.     Overt acts committed in furtherance of this conspiracy include, but are not limited to: the coordinated deployment of law enforcement personnel in anticipation of the protest; the issuance of threats by public officials intended to deter participation in constitutionally protected activity; the selective towing of vehicles associated with politically active individuals; the use of excessive force against peaceful demonstrators; and the arbitrary detention and public handcuffing of Plaintiff Leavy without legal justification. These acts were not isolated incidents, but rather components of a deliberate and concerted effort to intimidate, punish, and suppress Plaintiffs' exercise of their civil rights, carried out under color of law and motivated by discriminatory animus toward their political affiliations and protected speech.

89.     The existence of a conspiracy is further evidenced by the coordinated nature of the law enforcement response, which included the pre-arranged presence of multiple Flint Police

Department units and Michigan State Police cruisers arriving within minutes of the protest's commencement. This rapid and disproportionate deployment, combined with the prior warning issued by Mayor Neeley to a protest organizer and the involvement of Chief Green—who had a documented adversarial relationship with Plaintiffs—demonstrates a shared understanding among Defendants to suppress the protest through intimidation and force. The selective targeting of Plaintiffs' vehicles, the absence of citations or warnings for similarly situated participants, and the use of excessive force against Plaintiff Leavy all constitute overt acts taken in furtherance of this unlawful agreement.

90.     As a direct and proximate result of the unlawful conspiracy among Defendants, Plaintiffs suffered significant injuries, including physical harm, emotional distress, reputational damage, and the deprivation of their constitutional rights. The coordinated and targeted actions taken against them—motivated by discriminatory animus and executed under color of law—inflicted not only immediate physical and psychological trauma, but also caused a chilling effect on their ability to engage in future political expression and public assembly. These injuries are compensable under 42 U.S.C. § 1985(3) and reflect the tangible consequences of Defendants' concerted efforts to suppress dissent and punish protected activity.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Under Michigan Common Law – Against All Individual Defendants)

91.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

92.     On June 1, 2025, the Plaintiffs convened an open public assembly. During this assembly, Plaintiffs exercised their First Amendment rights by engaging in peaceful protest, delivering speeches, singing spiritual songs, and marching through public streets to express their views on matters of public concern, including governmental accountability and civil rights. The

assembly was nonviolent, organized, and intended to foster civic engagement and community solidarity.

93.     Defendants engaged in extreme and outrageous conduct by deliberately targeting Plaintiff Terrance Leavy for public humiliation and physical mistreatment. Without legal justification or probable cause, Defendants forcibly removed Plaintiff from his lawfully parked vehicle, violently restrained him in full public view, and subjected him to an excessive and degrading detention. In addition to this physical mistreatment, Defendants ordered the towing of Plaintiff Leavy's vehicle—as well as the vehicle of Plaintiff John Groff—despite the presence of numerous similarly situated vehicles that were not cited or removed. This selective and punitive seizure of property, carried out in conjunction with the public and forceful detention, was designed to intimidate and retaliate against Plaintiffs for their political affiliations and protected expressive conduct. The Defendants' actions exceeded all bounds of decency tolerated in a civilized society and were undertaken with reckless disregard for the severe emotional and psychological harm inflicted upon Plaintiffs.

94.     Defendants' conduct was intentional, willful, and malicious—or, at a minimum, carried out with reckless disregard for the high probability that it would cause Plaintiff Terrance Leavy severe emotional distress. Defendants knew or should have known that forcibly extracting Plaintiff from his vehicle without cause, violently restraining him in public, and selectively seizing his vehicle in a manner designed to single him out from other protest participants would inflict significant psychological trauma. Their actions demonstrated a conscious indifference to Plaintiff's dignity, safety, and constitutional rights, and were calculated to cause emotional harm through both physical force and the targeted deprivation of property.

95.     Defendants' decision, executed through the deployment of duly licensed and armed law enforcement officers, was arbitrary, capricious, vindictive, and far exceeded the bounds of

lawful authority. The actions taken against Plaintiffs, including the forcible detention, public humiliation, and targeted seizure of property, lacked any legitimate governmental interest and were not narrowly tailored to serve any compelling state objective. Rather, these actions were motivated by personal animus, political retaliation, and a deliberate intent to suppress constitutionally protected expression. The use of state power in this manner reflects a gross abuse of authority and a calculated effort to intimidate individuals engaged in lawful protest and political participation.

96.    During the course of Plaintiff Leavy's forcible extraction, Defendants—uniformed, visibly armed, and acting under color of law—made unnecessary, excessive, and unlawful physical contact with him. Despite Plaintiff's non-threatening demeanor and repeated requests for clarification, Defendants escalated the encounter through aggressive and confrontational behavior, including verbal threats and physical posturing that instilled in Plaintiff a well-founded fear of imminent bodily harm. In addition to the physical and emotional trauma inflicted, Defendants ordered the towing of Plaintiff Leavy's vehicle, as well as the vehicle of Plaintiff John Groff, without citation or legal justification.

97.    This targeted seizure of property, carried out in full view of protest participants and the public, caused Plaintiffs further humiliation, reputational harm, and financial burden— including towing and impound fees, disruption of transportation, and emotional distress associated with the arbitrary deprivation of personal property. These actions compounded the overall harm and underscored the retaliatory and punitive nature of Defendants' conduct.

98.    Plaintiff Leavy's apprehension and emotional distress were significantly heightened by the threats and aggressive conduct of Defendants, particularly given his status as an unarmed African American male in a city with a documented history of police violence and racialized enforcement practices. His fear was grounded in both personal experience and broader community awareness of similar encounters that had escalated into serious harm.

99.     Plaintiff Groff, a white male, also experienced substantial emotional distress and fear during the incident. Despite his different racial background, Groff was subjected to the same pattern of targeted enforcement, public humiliation, and arbitrary seizure of his vehicle without cause. The sudden and disproportionate law enforcement response, combined with the knowledge of his association with a politically active protest group and prior conflicts with city officials, contributed to a well-founded fear of retaliation and a chilling effect on his willingness to engage in future protected activity. Both Plaintiffs experienced trauma rooted in the abuse of governmental authority and the deliberate targeting of individuals based on their political expression and affiliations.

100.     Defendants knowingly and intentionally engaged in the aforementioned conduct—or, at a minimum, acted with reckless disregard for the foreseeable consequences of their actions—with the purpose and effect of causing Plaintiffs to suffer severe emotional distress. Their actions, including the public and forceful detention of Plaintiff Leavy, the targeted and unjustified seizure of both Plaintiffs' vehicles, and the use of threats and intimidation during a peaceful protest, were calculated to humiliate, punish, and deter Plaintiffs from exercising their constitutional rights. Defendants' conduct was not only excessive and unjustified, but also carried out with full awareness of the emotional and psychological harm it would inflict, thereby satisfying the standard for intentional infliction of emotional distress under applicable law.

101.     The conduct of the Defendants was so egregious, deliberate, and unjustified that it transcended all bounds of human decency and is utterly intolerable in a civilized society. The public humiliation, physical aggression, and targeted seizure of Plaintiffs' property—carried out under color of law and without legal justification—reflect a gross abuse of governmental power. Such conduct shocks the conscience and constitutes the kind of extreme and outrageous behavior that the law recognizes as actionable under the doctrine of intentional infliction of emotional

distress.

102.     Plaintiff Beverly Biggs-Leavy, a candidate for Flint City Council and the wife of Plaintiff Terrance Leavy, was indirectly targeted through the retaliatory and humiliating treatment of her husband during the protest. At the time of the incident, Mrs. Biggs-Leavy had recently prevailed over the incumbent mayor's endorsed candidate in a highly contested election, drawing public attention and political scrutiny. The timing and nature of the enforcement actions against her husband—carried out in a public and aggressive manner—were clearly intended to intimidate and retaliate against her for her political success and opposition to the current administration.

103.     Similarly, Jedidiah Brown, the protest organizer and a known civil rights activist with a history of litigation and public conflict with city officials, was also targeted through the selective enforcement of city ordinances and the disproportionate law enforcement response. The actions taken against individuals closely associated with Mr. Brown and Mrs. Biggs-Leavy reflect a broader pattern of political retaliation and viewpoint discrimination, further supporting the inference of a coordinated effort to suppress dissent and punish those engaged in protected political expression.

104.     As a direct and proximate result of Defendants' unlawful, retaliatory, and outrageous conduct, Plaintiffs suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, and psychological trauma. The public nature of the confrontations, the excessive use of force, the targeted seizure of property, and the chilling effect on their political expression caused lasting emotional harm. Several Plaintiffs required medical evaluation and treatment for the psychological impact of the incident, including symptoms consistent with acute stress and trauma. These injuries were foreseeable consequences of Defendants' actions and are compensable under applicable law.

105.     As a direct and proximate result of Defendants' actions, Plaintiff Terence Leavy

has suffered—and continues to suffer—severe emotional distress and mental anguish. This includes, but is not limited to, persistent anxiety, fear, humiliation, and psychological trauma stemming from the experience of being physically assaulted and unlawfully removed from his personal vehicle in full public view. The public nature of the incident, combined with the excessive force used and the absence of any lawful justification, has left Plaintiff with lasting emotional injuries that interfere with his daily life, sense of safety, and willingness to engage in constitutionally protected activities. These harms are ongoing and have required, and may continue to require, professional medical and psychological treatment.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiffs, TERENCE D. LEVY, BEVERLY BIGGS-LEAVY, JEDEDIAH BROWN, and JOHN GROFF, demand judgment against Defendants, SHELDON A. NEELEY, TERENCE GREEN, MICHAEL TISDALE OFFICER JONES, and OFFICER J. BRYANT in their official and individual capacities, alleging as follows, and in the alternative, for alternative, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest pursuant to 42 U.S.C. 1988, and any further relief which the court may deem equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Dated: June 3, 2025

_/s/ Lawrence A. Katz_____
LAWRENCE A. KATZ, ESQUIRE
NJ State Bar No.: 027051988
(Admitted in the E.D. of Michigan)
BEOWULF BUILDING
1814 East Route 70 – Suite 321
Cherry Hill, NJ 08003
(T) 856.652.2000 x497
(F) 856.375.1010
lakatz@lentolawgroup.com
*Attorney for Plaintiff*

*Of Counsel:*
DOLORES BOJAZI
BEOWULF BUILDING
1814 East Route 70 – Suite 321
Cherry Hill, NJ 08003