**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERENCE D. LEAVY, BEVERLY BIGGS-LEAVY, JEDEDIAH BROWN, and JOHN GROFF,

Plaintiffs,

Case No. 2:25-cv-11641-SDK-CI
Hon. Shalina D. Kumar
Magistrate Judge Curtis Ivy, Jr.

v.

SHELDON A. NEELEY, TERENCE GREEN, MICHAEL TISDALE, OFFICER JONES, and OFFICER J. BRYANT, in their official and individual capacities,

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

Defendants Flint Mayor Sheldon Neeley, Flint Police Chief Terence Green, and Flint Police Officers Michael Tisdale, Carmen Jones, and James Bryant, in their official and individual capacities, by and through their attorneys Butzel Long, a professional corporation, respectfully move to dismiss Plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6), and in support thereof state as follows:

1. The undersigned counsel certifies that counsel communicated in writing with opposing counsel on August 22, 2025, explaining the nature of the relief to be

sought by way of this motion and seeking concurrence in the relief. Opposing counsel declined the same date.

2. Plaintiffs' Complaint fails to state a claim on which relief can be granted and Defendants hereby move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and moreover Plaintiffs Biggs-Leavy and Brown lack standing pursuant to Fed.R.Civ.P. 12(b)(1).

3. Defendants rely on the arguments and exhibits submitted in the Brief filed in support of this motion, which follows and is incorporated herein by reference.

WHEREFORE, for the reasons set forth in Defendants' Brief filed in support of this Motion to Dismiss, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) and award Defendants their costs and attorneys' fees, plus such other relief as this Court deems proper.

*Respectfully submitted,*

Dated: August 29, 2025

BUTZEL LONG, PC
By: *<u>/s/ Sheldon H. Klein</u>*
Frederick A. Berg (P38002)
Sheldon H. Klein (P41062)
Laura S. Faussié (P48933)
150 W. Jefferson Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com
klein@butzel.com
faussie@butzel.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERENCE D. LEAVY, BEVERLY BIGGS-LEAVY, JEDEDIAH BROWN, and JOHN GROFF,

Plaintiffs,

Case No. 2:25-cv-11641-SDK-CI
Hon. Shalina D. Kumar
Magistrate Judge Curtis Ivy, Jr.

v.

SHELDON A. NEELEY, TERENCE GREEN, MICHAEL TISDALE, OFFICER JONES, and OFFICER J. BRYANT, in their official and individual capacities,

Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

## ISSUES PRESENTED

Question I. Have Plaintiffs stated a §1983 Excessive Force claim?

Question II. Have Plaintiffs stated a §1983 First Amendment claim?

Question III. Have Plaintiffs stated a §1983 First Amendment Retaliation claim?

Question IV. Have Plaintiffs stated a §1983 Equal Protection claim?

Question V. Have Plaintiffs stated a §1985 Conspiracy claim?

Question VI. Should all § 1983 claims brought by Plaintiffs-Biggs-Leavy and Brown be dismissed because they have not alleged cognizable damages?

Question VII. If Plaintiffs have stated any §1983 claims, are Defendants entitled to qualified immunity because their liability was not clearly established?

Question VIII. Have Plaintiffs stated a state law intentional Infliction of Emotional Distress claim?

**<u>TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>**

<u>Question I.</u> *Moore v. Oakland Co*, 126 F.4th 1163, 1168 (6th Cir. 2025),

<u>Question II.</u> *Biggs-Leavy v. Lewis,* No. 23-cv-12123, 2024 U.S. Dist. LEXIS 46575 (E.D. Mich. Mar. 15, 2024), *aff'd*, 2025 U.S. App. LEXIS 3284 (6th Cir. Feb. 10, 2025).

<u>Question III.</u> *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022).

<u>Question IV.</u> *Moore v. Oakland Co*, 126 F.4th 1163, 1168 (6th Cir., 2025),

<u>Question V.</u> *Rodrigues v. Martin Marietta Corp., Master Builders Div.*, 829 F.2d 39 (6th Cir. 1987); *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022); *Jackson v. City of Cleveland*, , 925 F.3d 793, 817 (6th Cir. 2019)

<u>Question VI.</u> *Claybrook v. Birchwell*, 199 F.3d 350, 357 (CA 6, 2000)

<u>Question VII.</u> *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 589 (2018)

<u>Question VIII.</u> *Parsons v. City of Ann Arbor*, No. 2:20-cv-10486, 2021 U.S. Dist. LEXIS 38527, at *21-22 (E.D. Mich. Mar. 2, 2021

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF THE CASE ....1
II. STATEMENT OF FACTS ....3
A. The Complaint. ....3
1. Actions Allegedly Taken by Individual Police Defendants. ....4
2. Actions Allegedly Taken by Defendant Mayor Neeley. ....6
3. Actions Allegedly Taken by the Police Chief Green. ....6
4. The Video Evidence. ....6
B. Plaintiffs' Allegations of Liability. ....8
III. ARGUMENT ....9
A. General Principles ....9
1. Standard of Review ....9
2. The Common Elements of a § 1983 Claim. ....11
3. Plaintiffs' Claims Must Be Established Separately for Each Plaintiff and Against Each Defendant ....12
4. All § 1983 Official Capacity Claims Must Be Dismissed. ....13
B. Plaintiffs Have Failed to State Any § 1983 Claim. ....14
1. Leavy Was Not Subject to Excessive Force (Count VI) ....14
2. Plaintiffs Fail to State a Claim for Violation of Their First Amendment Rights. (Count I) ....22
C. Plaintiffs Have Failed to State a First Amendment Retaliation Claim (Count III). ....25
D. Plaintiffs Have Not Stated a § 1985 Conspiracy Claim (Count II). ....27
E. Plaintiffs Have Not Stated an Equal Protection/Selective Enforcement Claim (Count V). ....29

F. Plaintiffs Have Not Alleged a Cause of Action Against Defendants Mayor Neeley and Chief Terence Green. ........................30

G. The § 1983 Brought by Plaintiffs Biggs-Leavy and Brown Should Be Dismissed Because They Do Not Allege Cognizable Injuries.........................................................................33

H. Plaintiffs Have Failed to State a Claim For Intentional Inflection of Emotional Distress (Count V). .......................................34

1. Defendants' Alleged Acts and Plaintiffs' Alleged Injuries Do Not State a Claim for IIED Under Michigan Law .....................................................................34

2. The IIED Claim Is Barred by Immunity ..................................36

IV. CONCLUSION...........................................................................................39

# INDEX OF AUTHORITIES

## Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank*,
727 F.3d 502 (6th Cir. 2013) ........ 10, 31, 32

*Anderson v. Creighton*,
483 U.S. 635, 107 S. Ct. 3034 (1987) ........ 12

*Armstrong v. Ypsilanti Charter Twp*,
248 Mich. App. 573, 640 N.W.2d 321 (2001) ........ 37

*Backus v. Kauffman*,
238 Mich. App. 402, 605 N.W.2d 690 (1999) ........ 38

*Bailey v. City of Ann Arbor*,
860 F.3d 382 (6th Cir. 2017) ........ 10

*Beals v. Michigan*,
497 Mich. 363 (2015) ........ 36

*Bell v. City of Southfield*,
37 F.4th 362 (6th Cir. 2022) ........ passim

*Biggs-Leavy v. Lewis,*
No. 23-cv-12123, 2024 U.S. Dist. LEXIS 46575 (E.D. Mich. Mar. 15, 2024),
*aff'd*, 2025 U.S. App. LEXIS 3284 (6th Cir. Feb. 10, 2025) ........ ii, 25, 26

*Chambers v. Sanders*,
63 F.4th 1092 (6th Cir. 2023) ........ 33

*City of Escondido v. Emmons*,
586 U.S. 38, 139 S.Ct. 500 (2019) ........ 11, 12

*Clark v. Stone,*
998 F.3d 287 (6th Cir. 2021) ........ 10

*Claybrook v. Birchwell*,
199 F.3d 350 (6th Cir. 2000) ........ ii, 33

*Ctr. for Bio-Ethical Reform,*
648 F.3d 365 (6th Cir. 2011) ........ 29

*Cunningham v. Shelby County*,
994 F.3d 761 (6th Cir. 2021) ........ 12

*District of Columbia v. Wesby*,
583 U.S. 48, 138 S.Ct. 577 (2018)....11

*Dunigan v. Thomas,*
No. 22-cv-11038, 2023 U.S. Dist. LEXIS 31379
(E.D. Mich. Feb. 24, 2023)....35

*Dunn v Matatall*,
549 F.3d 348 (6th Cir. 2008).... 20, 21

*Farber v. City of Paterson*,
440 F.3d 131 (3d Cir. 2006)....28

*Gates v. Khokhar*,
884 F.3d 1290 (11th Cir. 2018)....23

*Graham v. Connor*,
490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).... 14, 21

*Griffin v. Breckenridge*,
403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)....27

*Hardrick v. City of Detroit*,
876 F.3d 238 (6th Cir. 2017)....13

*Hartman v. Thompson*,
931 F.3d 471 (6th Cir. 2019)....23

*Hartzler Excavating, LLC v. Quattrin*,
No. 351425, 2021 Mich. App. LEXIS 430 (Ct. App. Jan. 21, 2021)....38

*Herman v. City of Detroit*,
261 Mich. App. 141, 680 N.W.2d 71 (2004)....37

*Heyerman v. Cty. of Calhoun*,
680 F.3d 642 (6th Cir. 2012)....12

*Hile v. Michigan*,
86 F.4th 269 (6th Cir. 2023)....9

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*,
926 F.2d 505 (6th Cir. 1991)....28

*Jackson v. City of Cleveland*,
925 F.3d 793 (6th Cir. 2019).... ii, 28

*Jaco v. Bloechle*,
739 F2d 239 (6th Cir. 1984)....33

*Johnson v. Mount Pleasant Pub. Sch.*,
745 F. Supp. 3d 479 (E.D. Mich. 2024)....................34

*Kendricks v. Rehfield,*
270 Mich. App. 679 (2006)....................36

*Kottmyer v. Maas*,
436 F.3d 684 (6th Cir. 2006)....................11

*Kreipke v. Wayne State Univ.*,
807 F.3d 768 (6th Cir. 2015)....................10

*Lee v. Miller*,
No. 15-14255, 2017 U.S. Dist. LEXIS 212422 (E.D. Mich. Dec. 28, 2017)......28

*Lewis v. LeGrow*,
258 Mich. App. 175, 670 N.W.2d 675 (Mich. Ct. App. 2003)....................35

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922, 102 S. Ct. 2744 (1982)....................11

*McCutcheon v. Fed. Election Com'n*,
572 U.S. 185 (2014)....................22

*Mezibov v. Allen*,
411 F.3d 712 (6th Cir. 2005)....................25

*Monell v. New York City Dept. of Social Services*,
436 U.S. 658, 98 S. Ct. 2018, 2035 (1978)....................13

*Moore v. Oakland Co*,
126 F.4th 1163 (6th Cir., 2025) .................... ii, 18, 19, 20

*Nawrocki v. Macomb Cty. Rd. Comm'n*,
463 Mich. 143, 615 N.W.2d 702 (2000)....................36

*Nicklas v. Koelling*,
No. 248870, No. 248871, 2004 Mich. App. LEXIS 3321
(Ct. App. Dec. 7, 2004)....................37

*Odom v. Wayne Cty.*,
482 Mich. 459, 760 N.W.2d 217 (2008).................... 37, 38

*Osberry v. Slusher*,
750 F. App'x 385 (6th Cir. 2018) ....................10

*Parsons v. City of Ann Arbor*,
No. 2:20-cv-10486, 2021 U.S. Dist. LEXIS 38527
(E.D. Mich. Mar. 2, 2021)....................36

*Phelps v. Coy.*,
286 F.3d 295 (6th Cir. 2020)....................14

*Post v. Trinity Health-Michigan*,
44 F.4th 572 (6th Cir. 2022) .................... ii, 27

*Roberts v. Auto-Owners Ins. Co*.,
422 Mich. 594, 374 N.W.2d 905 (1985)....................35

*Rodrigues v. Martin Marietta Corp., Master Builders Div.*,
829 F.2d 39 (6th Cir. 1987).................... ii, 27

*Rondigo, L.L.C. v. Twp. of Richmond*,
641 F.3d 673 (6th Cir. 2011)....................9

*Rudd v. City of Norton Shores*,
No. 1:18-cv-124, 2021 U.S. Dist. LEXIS 194593
(W.D. Mich. Oct. 8, 2021) ....................35

*Rudlaff v Gillispie*,
791 F3d 638 (6th Cir. 2015).................... 21, 22

*Slusher v. Carson*,
488 F. Supp. 2d 631 (E.D. Mich. 2007)....................12

*Smith v. City of Troy, Ohio*,
874 F.3d 938, (6th Cir. 2017)....................11

*Thaddeus–X v. Blatter*,
175 F.3d 378 (6th Cir. 1999)....................25

*TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio,*
430 F.3d 783 (6th Cir. 2005)....................29

*Vieth v. Jubelirer*,
541 U.S. 267, 124 S.Ct. 1769 (2004) ....................28

*Webb v. United States*,
789 F.3d 647 (6th Cir. 2015)....................27

*Ziss Bros. Constr. v. City of Indep.*,
439 F. App'x 467 (6th Cir. 2011) ....................29

**Statutes**

42 U.S.C. § 1983 ....................33

MCL § 257.602....................24

MCL § 257.676b(1) ....................24

MCL § 257.676b(4) ....................24
MCL § 691.1407 ....................36
MCL § 691.1407(1) ....................37
MCL § 691.1407(3) ....................38
MCL § 691.1407(5) ....................37

**Rules**

Fed.R.Civ.P. 12(b)(1)....................9
Fed.R.Civ.P. 12(b)(6)....................9, 39

## I. INTRODUCTION AND SUMMARY OF THE CASE

Plaintiffs are political activists and rabble rousers who have been endeavoring for several years to seize control of the City of Flint, Michigan from its elected officials, including the City Council and the mayorship, through staged political stunts and follow-on litigation. Plaintiffs and their cronies have on numerous occasions caused uproar, mayhem, and breaches of the peace during City Council meetings, have paraded a coffin through the streets of Flint before parking it before the Mayor's residence, and have filed a plethora of baseless civil rights and tort lawsuits against City Council members, the police, and the City government.

This case is one of 12 lawsuits filed in federal and state courts by these Plaintiffs and their cabal since June 2023, asserting First Amendment challenges against various members of the Flint local government and police force.[1] All 12 suits have been filed by the Lento Law Group.[2] In five cases, the suits have already been

---

[1] Plaintiffs admit their litigious and confrontational history with the City and its officers. See e.g., Cmplt ¶¶ 21, 60, 82, 103; PageID.5,15, 20, 27.

[2] Motions to disqualify the Lento Law Firm are pending in this and one other federal case based on Joseph Lento's disbarment and suspension in other jurisdictions, and egregious violations of the local rules of this Court. *See* ECF No. 15; PageID.82.

dismissed for failure to state a claim, motions to dismiss are pending in others, and further motions will continue to be filed as the barrage of suits is ongoing.[3]

Here, Plaintiffs Jedediah Brown ("Brown"), Beverly Biggs-Leavy ("Biggs-Leavy"), Terence D. Leavy ("Leavy"), and John Groff ("Groff") have sued Defendants in their individual and (ostensibly) in their official capacities. The Defendants are Sheldon Neeley, Mayor of the City of Flint ("Mayor Neeley"); Flint Chief of Police Terence Green ("Chief Green"); Flint Police Sergeant Michael Tisdale; and Flint Police Officers Jones and Bryant (sometimes referred to collectively as the "Police Officer Defendants."). Complaint ("Cmplt"), PageID.1. This lawsuit arises out of a June 1, 2025 "protest walk" organized by Plaintiff Brown, who proudly identifies himself as "a Chicago-based activist and protest organizer with a history of conflict with Flint officials." *Id.* ¶ 21; PageID.5. Plaintiffs admit that Defendants did not interfere with the protest, so long as it occurred on the sidewalk. *Id.* ¶ 34; PageID.9. All of Plaintiffs' claims are based on the allegation that members of the Flint Police Department required Plaintiffs Leavy and Groff to exit their separate vehicles for impeding traffic, and their vehicles were subsequently towed. Leavy further alleges that, in "extracting" him from his vehicle and

[3] A list identifying those federal and state cases is filed herewith as Exh. 3.

handcuffing him, police officers employed excessive force.[4] He was "released at the scene without being transported or booked." *Id.* ¶ 30; PageID.8.

Based upon these allegations, Plaintiffs have asserted a violation of their civil rights under § 1983 for "deter[ring], punish[ing] and chill[ing] Plaintiffs' constitutionally protected speech and assembly" and for "selective enforcement of law". *Id.* ¶¶ 42, 61; PageID.10, 15. This lawsuit is merely another one of the myriad staged politically-motivated lawsuits that preceded and followed it.

## II. <u>STATEMENT OF FACTS</u>

### A. The Complaint.

Plaintiff Brown is a self-described "Chicago-based activist and protest organizer" with an admitted "documented history of conflict with city officials, including prior arrests, public condemnation by elected officials, and pending litigation against the Flint Police Chief." Cmplt ¶¶ 3, 21; PageID.2, 5. He organized a "peaceful protest walk" on June 1, 2025. *Id.* ¶¶ 19, 20; PageID.5. Plaintiffs admit that Brown "did not obtain a permit as required by Flint Ordinance § 42-4." *Id.* ¶ 21; PageID.5.[5] Plaintiffs allege that "The group began walking north on Saginaw Street,

---

[4] Body camera video depicting Leavy's apprehension by Officer Tisdale – which this Court may consider on this motion (*Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022)) - clearly demonstrates these allegations are false. Exh. 1A and B.

[5] Without a permit, the protest was "unlawful," as § 42-4 makes it "… **<u>unlawful</u>** for any person to conduct… any public… gathering in any public street… unless permission be first obtained from the City Council."(emphasis added) (cleaned up).

accompanied by approximately a dozen vehicles," and that the protest participants in vehicles were instructed by police officers to "activate their hazard lights" and "keep moving." ¶¶ 20, 22; PageID.5, 6. Despite this admonition, Plaintiffs admit that "the procession came to a stop," at which point both Plaintiff Groff and Plaintiff Leavy were approached by police, as described below. ¶¶ 23, 27; PageID.6, 7.

### 1. Actions Allegedly Taken by Individual Police Defendants.6

Plaintiffs claim that plaintiff Groff, along with others in "the line of vehicles" was approached by a female police officer and instructed to "activate their hazard lights and continue moving." ¶ 22; PageID.6. Groff drove two further blocks and then stopped again, at which point he "was approached again by the same officer, who accused him of impeding traffic." *Id.* at ¶ 23. Plaintiffs allege that, at that time, defendant Officer Bryant told Groff that his car would be towed for impeding traffic. *Id.* Plaintiffs claim "Officer J. Bryant then ordered Plaintiff Groff and his passengers to exit the vehicle so that it could be towed…." *Id.* at ¶ 24.

---

In addition, Ordinance § 42-1 requires a permit for "processions… along any street." The Ordinances are available at https://codelibrary.amlegal.com/codes/flint/latest/flint_mi/0-0-0-12622.

[6] Other than identifying Officer Bryant as the individual who approached Groff, Plaintiffs do not specifically identify the officers allegedly taking other actions described in the Complaint, including the apprehension of Leavy.

Plaintiffs allege that, shortly after the Groff incident, "approximately five officers forcefully extracted [Leavy] from his vehicle." PageID.7; ¶ 27. Plaintiffs claim that "At the time of the extraction, Mr. Leavy's vehicle was positioned adjacent to the curb, not obstructing traffic or occupying the main roadway." *Id.*

They further allege "he was forcibly removed from his vehicle," "violently thrown to the ground," "physically restrained by multiple officers," "handcuffed without any lawful justification," and then "placed into a police vehicle," and that the officers used excessive force against him. *Id.* ¶¶ 29, 54, 66; PageID.7, 13, 16. Plaintiffs allege that, "At the time of the incident, Mr. Leavy posed no threat to officer safety, was not obstructing traffic, and had complied with prior police instructions." *Id.* ¶ 66; PageID.16. Exhibit 1A demonstrates the contrary. Leavy admits that, afterward, he was "released at the scene without being transported or booked." *Id.* ¶ 30; PageID.8. Plaintiffs allege that after Groff's and Leavy's cars were towed away, the protesters were allowed to continue their march: "Rather than dispersing the protest, law enforcement officers instructed participants to vacate the roadway and continue their demonstration from the adjacent sidewalk, thereby implicitly acknowledging the peaceful nature of the assembly and permitting its continuation in a modified form." *Id.* ¶ 34; PageID.9.

2. Actions Allegedly Taken by Defendant Mayor Neeley.

The sole "factual" allegation regarding Mayor Neeley is in ¶ 18 of the Complaint, which alleges "[u]pon information and belief" that Mayor Neeley "placed a phone call to Maurice Davis, a former Flint City Council member, in advance of the planned public assembly" and that "[d]uring this conversation, Mayor Neeley allegedly warned Mr. Davis that if the protest 'goes down,' there would be 'consequences.'" ¶ 18; PageID.5. These vague allegations are then referenced in ¶¶ 42, 51, 86, 89; PageID.10, 12, 21-23.

3. Actions Allegedly Taken by the Police Chief Green.

There are no factual allegations made against Police Chief Green, except that "upon information and belief" he issued "the directive to tow Plaintiff Groff's vehicle" and that the actions allegedly taken against Leavy were made "under his direction." ¶¶ 23, 25, 68, 81, 86, 89; PageID.6, 16, 17, 20-23.

4. The Video Evidence.[7]

The definitive record of the events is that contained within four police body cam video tapes, and related transcripts, Exh 1A-D (videos) and 2A-D (transcripts). The body cam footage of Leavy's apprehension (Tisdale Exh. 1A, 0:30-4:01; Bryant

[7] As detailed herein, this Court may consider video evidence to the extent it directly refutes Plaintiffs' allegations. For this reason, and not to improperly introduce argument into this "fact" section, Defendants highlight the discrepancies between the video footage and the allegations.

1B, 2:18-3:36) demonstrates: (1) Leavy's vehicle was impeding traffic by driving under the speed limit (he did not deny this when pulled over); (2) Leavy failed to turn over his license and registration when asked; (3) Leavy failed to place the vehicle in "park" when pulled over, but instead kept his foot on the brake; (4) Leavy failed to exit the vehicle when asked to do so approximately 27 times; (5) Leavy began to yell repeatedly (at least 25 times), "You don't have to drag me out," while refusing to exit the vehicle, and clearly with the intention to incite a reaction from numerous protesters gathered around his car, who then surrounded the vehicle and were yelling and becoming increasingly agitated; (6) eventually a small-statured female officer came to assist and together, she and the first officer pulled Leavy from the vehicle and his foot, which had been pressing the brake pedal, was removed and he appeared to trip and slid or fell slowly to the ground; (7) the vehicle, which was in drive, began to move away into the crowd, creating a dangerous situation due to his non-compliance; (8) the female officer attempted to place handcuffs on Leavy while he lay on the ground, and he resisted, but ultimately she was able to place them on; (9) the female officer led Leavy to a police cruiser and asked him to get in the back, and he feigned the inability to do so at first.

The video footage of Groff's interaction with police (Bryant Exh. 1B 0:25-2:30) also contradicts the allegations in the Complaint: It shows that Groff was pulled over, also for impeding traffic, without any altercation, and did not exhibit

any fear or distress; rather, he said, "Do you know who I am? I think you should tell the Chief who I am."[8] He was visibly composed and exited the vehicle without incident.[9] Exhibit C 0:20-1:38 shows Officer Jones telling other motorists, not just Groff and Leavy, they will be towed if they impeded traffic.

**B. Plaintiffs' Allegations of Liability.**

Plaintiffs bring suit for: Count I: Violation of the First Amendment; Count II: Conspiracy to Interfere With Civil Rights; Count III: Retaliation for Protected Activity; Count IV: Excessive Force; Count V: Selective Enforcement/Equal Protection Violation; Count VI: Conspiracy to Interfere With Civil Rights[10]; Count VII: "Intentional Infliction of Emotional Distress.[11]

The gravamen of Plaintiffs' claims are that Plaintiffs Leavy and Groff were subjected to traffic stops and their vehicles towed, with Leavy alleging the use of

---

[8] Groff is the Plaintiffs' counsel's "National Firm Administrator", https://www.lentolawgroup.com/firm-administrator. He is the mastermind of this and the other staged, dismissed lawsuits against the City. He was previously convicted of insurance fraud for staging auto accidents in New Jersey. See Defendants' Motion to Disqualify, ECF 15, PageID.333-341.

[9] By contrast, Plaintiffs allege: "Plaintiff Groff, a white male, also experienced substantial emotional distress and fear during the incident. Despite his different racial background, Groff was subjected to the same pattern of targeted enforcement, public humiliation, and arbitrary seizure of his vehicle without cause." Cmplt. at ¶ 99; PageID.26.

[10] This Count seems largely duplicative of Count II.

[11] This Count is misnumbered as Count V in the Complaint.

excessive force. As a result of those incidents, all Plaintiffs (without differentiation) claim they "suffered significant harm, including physical injuries, emotional distress, reputational damages… the chilling of their constitutional rights… lasting psychological trauma…." Cmplt. ¶ 49; PageID.11. As discussed herein, Plaintiffs have failed to state a cause of action in each of those counts; furthermore, Plaintiffs Biggs-Leavy and Brown lack standing to bring any of the claims. Defendants bring this Motion to Dismiss in lieu of an answer, pursuant to Fed.R.Civ.P. 12(b)(1) & (6).

## III. ARGUMENT

### A. General Principles

1. Standard of Review

The applicable standard of review under Rule 12(b)(6) is familiar:

> [T]he complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs.. . . However, a legal conclusion couched as a factual allegation need not be accepted as true.. . . [A] formulaic recitation of the elements of a cause of action will not do. . . The complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quotations and citations omitted). The same standard applies to a facial challenge under Rule 12(b)(1). *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023)(citations omitted). Allegations made upon "information and belief" are insufficient under *Twombly* and

*Iqbal* and should be "ignore[d] when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502, 506 (6th Cir. 2013).

In deciding the motion, this Court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Clark v. Stone,* 998 F.3d 287, 296 (6th Cir. 2021) (citing *Kreipke v. Wayne State Univ*., 807 F.3d 768, 774 (6th Cir. 2015)). In addition, the Court may consider video evidence "when deciding a Rule 12 motion if the video 'utterly discredits' the plaintiff's version of events." *Osberry v. Slusher*, 750 F. App'x 385, 390 (6th Cir. 2018) (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386-87 (6th Cir. 2017)); "If 'no reasonable jury could watch the video' and agree with the plaintiff, the video 'allows us to ignore the visible fiction in his complaint.'" *Id., citing Bailey,* at 386. "In such a situation, the court should not rely on the allegations in the complaint but should instead "view[] the facts in the light depicted by the videotape." *Id.*, *citing Scott v. Harris,* 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Consideration of video evidence on a motion to dismiss is particularly appropriate in cases involving police officers in order to "facilitate speedy resolution and protect officers from suit." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022).

2. The Common Elements of a § 1983 Claim

Each of the § 1983 claims fail because, as to each separate Plaintiff, they have not alleged: (1) the deprivation of a right, privilege, or immunity secured by the Federal Constitution or laws of the United States; (2) caused by a person acting under color of state law [*Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982)]; and that (3) "the unlawfulness of their conduct [was] clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 589 (2018) (quotations omitted). Unless the alleged violation was clearly established, each Defendant is entitled to qualified immunity. *Id.* Whether a right is clearly established is a "question[] of law for the court." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 944 (6th Cir. 2017). Here, each of Plaintiffs' § 1983 claims fails because they have not alleged a substantive violation, for the reasons explained in the discussion of the several § 1983 counts below, and because even if there was a substantive violation, it was not clearly established, so it is barred by qualified immunity.

To avoid immunity, it must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wesby*, *supra* at 63 (quotation omitted). Only caselaw of the Supreme Court and, perhaps, controlling authority from the Sixth Circuit, is sufficient for a right to be clearly established. *City of Escondido v. Emmons*, 586 U.S. 38, 43, 139 S. Ct. 500, 503 (2019). Further, a clearly established

right must be identified in more than a generalized sense. *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 3039 (1987), and must "squarely govern[] the specific facts at issue." *City of Escondido*, 586 U.S. at 43.

In the sections that follow, Defendants explain why Plaintiffs § 1983 claims are barred under established law. However, it is Plaintiffs "that bear the burden of showing that the right was clearly established. *Cunningham v. Shelby County*, 994 F.3d 761, 765 (6th Cir. 2021)." *Bell v City of Sfield*, 37 F.4th 362, 367 (CA 6, 2022). Defendants do not believe that Plaintiff will be able to meet that burden on of the § 1983 claims.

3. <u>Plaintiffs' Claims Must Be Established Separately for Each Plaintiff and Against Each Defendant</u>

There is neither collective liability nor collective recovery under § 1982 – for each claim, each plaintiff must establish his or her claim separately as to each Defendant. "To establish liability under section 1983 against an individual defendant, the plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint." *Slusher v. Carson*, 488 F. Supp. 2d 631, 638 (E.D. Mich. 2007)(quotation omitted). "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). "Because vicarious liability is inapplicable to… § 1983 suits, a plaintiff

must plead that each… defendant, ***through the official's own individual actions***, has violated the Constitution. *Iqbal*, 556 U.S. at 676 (emphasis added).

4. All § 1983 Official Capacity Claims Must Be Dismissed.

Although the caption of the Complaint asserts that Defendants are sued in their official and individual capacities, the words "official capacity" are entirely absent from the Complaint. Counts I, III, and IV expressly state that they are individual capacity claims; the other counts are silent. It is unclear whether Plaintiffs assert official capacity claims or simply pasted boilerplate from another document; either way, they have failed to state a claim as to the federal claims.

A § 1983 claim asserted against municipal employees in their official capacity is a claim against the municipality. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n 55, 98 S. Ct. 2018, 2035 (1978). Such a claim will only lie where the alleged deprivation of rights was caused "by a municipal policy or custom." *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). Plaintiffs' Complaint is devoid of any such allegations, so the §1983 "official capacity" claims, if any, must be dismissed, and Defendants will not further address those issues.

## B. Plaintiffs Have Failed to State Any § 1983 Claim.

### 1. Leavy Was Not Subject to Excessive Force (Count VI)

#### *a) The Standard for Evaluating an Excessive Force Claim.*

Leavy alleges that the Police Defendants' use of force against him[12] while removing him from his vehicle and handcuffing him was "excessive," and therefore violated his constitutional rights under the Fourth and Fourteenth Amendments. ¶ 69; PageID.17. Because Leavy was a "free citizen" and not a prisoner, however, his claims arise under the Fourth Amendment, only. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2020), *citing Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment analysis employs a "reasonableness standard" that "requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure." *Id.* (citing *Graham*, 490 U.S. at 396). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Id.*

---

[12] Count IV for "Excessive Force" describes actions taken against Plaintiff Leavy, only. Insofar as the Complaint can be read to assert that cause of action on behalf of any other Plaintiff, it fails to state a claim as no acts are alleged against those Plaintiffs, *and* those Plaintiffs lack standing to bring a cause of action for anything allegedly done to Leavy, as discussed above.

*b) The Video Establishes that the Individual Police Defendants Did Not Use Excessive Force.*

"Given the unique nature of qualified-immunity cases, [courts] can generally rely on video footage at the motion-to-dismiss stage" and "for good reason." *Bell, supra,* at 364. That Court explained: "Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place. If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate." *Id.*

Here, that footage contradicts Leavy's claims that the Individual Police Defendants (the only Defendants alleged to have used excessive force). Footage from the bodycam of Officer Tisdale shows that Leavy was uncooperative from the outset of the encounter, which lasted a minute and a half. Tisdale approached the car (Exhibit 1A 1:27-3:10). Leavy's passenger already had her phone out and was recording the encounter. Leavy kept the car in "drive" rather than putting it in park.[13]

[13] Plaintiffs admit that Leavy never took the car out of "drive," creating a "potentially hazardous situation." "As they pulled him from the driver's seat, the vehicle—still in drive—began to move forward, creating a potentially hazardous situation." Cmplt. ¶ 27; PageID.7. This is confirmed in the video footage: When the driver's side door opens there is a clear view of the gearshift on the center console, and the car is clearly not in "park." (Tisdale 1:33). After Leavy is extracted from the vehicle, it is evident that the car had been in "drive" the entire time, based on the position of Leavy's right foot on the brake (Tisdale Exh 1A, 1:33-2:26), and the speed with which the car moved forward on what appears to be a flat roadway after he was removed from the vehicle. (Bryant 2:50-2:54).

Tisdale immediately asked for Leavy's license, registration, and proof of insurance, and explained that Leavy was impeding traffic, and causing a backup down Saginaw Street by driving "5 miles an hour in the lane of traffic," and that his vehicle would be impounded. The passenger began to argue with Tisdale about whether or not they were impeding traffic and told Tisdale he would not be impounding the vehicle. Leavy did not comply with the request for his license, registration, and insurance, and Tisdale asked for those documents again, and repeated that the vehicle would be impounded. They argued for a few seconds, and Leavy still did not hand over the license, registration, or insurance. Tisdale then told Leavy to get out of the vehicle and opened the door. (Exh. 1A 2:02).

Tisdale reached in and placed his right hand on Leavy's left wrist, and then immediately released it and placed his left hand there instead. (Exh. 1A 2:04). He reached into the car with his right hand and appeared to slide the seatbelt off of Leavy's shoulder. (Exh. 1A 2:07). Leavy stated that he was getting out, and placed his left foot out of the car, but then struggled, pulled his arms away and leaned back, apparently changing his mind. Tisdale didn't appear to have had a very firm purchase on Leavy, as Leavy's left sleeve became pulled over his hand and dangled, suggesting that Tisdale was mostly grabbing fabric. (Exh. 1A 2:14). Tisdale then asked that Leavy "get out of the car" approximately 27 times, Leavy shouting theatrically "you don't have to drag me out," approximately 25 times. Tisdale called

for backup (Exh. 1A 2:33), and the two continued their verbal back and forth until Officer Jones arrived (Exh. 1A 3:00; Jones Exh. 1C 2:30) and she and Tisdale were able to pull Leavy from the car. (Bryant Exh. 1B 2:24-2:53). Leavy can be seen resisting the two by bracing his feet, and his right foot was still on the brake. (Jones Exh. 1C 2:45). As they pulled him, he tried to lift his right foot over the edge of the car and lost his balance, falling to the ground (Exh. 1C Jones 2:45-:2:48); as fell the officers were supporting some of his weight. (*Id.*). They then rolled him to his side, then face down, while Jones placed a cuff on his right hand. (Jones Exh. 1C 3:03) He visibly resisted, rolling back on to his side to yell at Jones and pulling his arm away. (Jones Exh. 1C 3:11) She finally got the second cuff on with assistance from another officer. (Jones Exh 1C 3:27) The car can be seen, driving itself away with no one inside, almost colliding with another police car. (Bryant Exh. 1B 2:50-2:54).

Meanwhile, when Tisdale first approached the car, there were no protesters visible in the immediate area. (Tisdale Exh. 1A 1:44). However, the incident attracted attention and people started to gather, and once Leavy began to yell repeatedly (Tisdale Exh. 1A 2:12), protesters eventually surrounded the car (which was in gear), including at least one person standing in front of it (Tisdale Exh. 1A 2:29), and at least one as well by the passenger door which was left open when Leavy's passenger exited early in the event. By the time Officer Jones showed up in response to the call for assistance, there were people even crowding the open driver's

side door, hampering the officers' ability to remove Leavy from the car. (Tisdale Exh. 1A 2:29-2:52; Jones Exh. 1C 2:38-2:41). The crowd was agitated, and protesters were yelling at the officers non-stop.

*c) The Individual Police Defendants Did Not Use Excessive Force as a Matter of Law.*

In *Moore v. Oakland Co*, 126 F.4th 1163, 1168 (6th Cir., 2025), the Sixth Circuit recently enunciated its standards in determining "Fourth Amendment tenets."

> An officer may stop a motorist if he has probable cause of a civil traffic infraction or reasonable suspicion of a crime. Because "roadside encounters between police and suspects are especially hazardous," officers may take measures to protect themselves. An officer may order the motorist to exit the vehicle. An officer may frisk the driver and search the passenger compartment for weapons if he reasonably believes that the motorist is armed and dangerous. And an officer may use a reasonable amount of force to conduct the stop.

With respect to the use of reasonable force, officers may not subdue a "non-violent, non-resisting, or only passively resisting suspect" with physical force such as tasing, pepper-spraying, or beating them. *Id.* Passive resistance, such as merely failing "to exit a vehicle," "does not justify" that degree of force. *Id.*

From the outset, *Moore* establishes that the Defendant Officers' conduct in this case was lawful under published precedent: Tisdale properly stopped Leavy for a "civil traffic infraction" (*see* discussion of "probable cause," *infra*); he properly "order[ed] the motorist to exit the vehicle"; he did not employ any of the means prohibited for a "non-violent, nonresisting or only passively resisting suspect"

(although as discussed below, Leavy did more than passively resist) – "such as tasing, pepper-spraying, or beating [him]."

The *Moore* case facts are similar to the instant case, and its analysis of applicable precedent is useful. In that case, the plaintiff Glorianna Moore was pulled over for going 50 miles per hour in a 35 mile per hour zone. *Moore,* 126 F.4th at 1166. When the officer requested her license, she refused to give it. *Id.* He then said, "you're coming out [of] the car," tried to open the door but found it locked, and "reached through the window to grab Moore's arm and 'control her hands.'" *Id.* She refused to turn off the car when ordered to, "leaned away and loudly objected, "No I don't. Get off of me. Get off of me." *Id.* The officer "opened the door from the inside and grabbed Moore's arm," and she "began yelling…as she thrashed her arm and body to twist away from him." *Id.* The officer called for backup, and "in the interim, he pulled Moore's arm out of the car with one hand and held her neck down with the other." *Id.* Two officers arrived and the three together handcuffed her. *Id.*

In analyzing these facts against existing precedent, the Sixth Circuit noted that "An officer may use force to restrain someone who actively resists by physically struggling with police, threatening them, resisting handcuffs, or acting erratically." *Id.* at 1168. Furthermore, "If an arrestee 'kick[s], flail[s], and wriggl[es] away' from an arresting officer's grasp… or 'repeatedly pull[s] his left arm away' from an

officer's handcuffs, officers may use a taser to restrain him." *Id., citing Bell, supra*, 37 F.4th at 368 (internal citation omitted).

The Sixth Circuit concluded that, based on that precedent, it was *not* "clearly established [precedent] that Officer Wilson could not reach into Moore's running car and grab her arm when she refused to produce her license" and it was *not* "clearly established [precedent] that he could not restrain her arm and hold her head down for two minutes when she screamed and flailed to escape [his] grasp." *Id.,* 1169. The Court arrived at these conclusions because the officer "used far less force – grabbing Moore's arm – than the officers who tased, pepper-sprayed and beat their passive suspects." *Id.* The Court also deemed it significant that Moore "failed to turn off the car, creating another safety risk to the officer standing next to her," and that "[h]er flailing and out-of-control yelling justified a hold to prevent her escape and to move her to Wilson's patrol car." *Id.* The Court held, "A reasonable officer could conclude that, taken together, these factors amounted to active resistance and warranted the modest step of grabbing her arm." *Id.*

Also factually similar is *Dunn v Matatall*, 549 F.3d 348, 353 (6th Cir. 2008), wherein the Sixth Circuit held that officers did not use excessive force in extracting the plaintiff from his vehicle, although they pointed a gun at him, and pulled him from the car and subsequently dropped him with such force that he broke his femur. In that case, the officers attempted to pull Dunn over for an expired license, but he

failed to pull over for two minutes, requiring them to follow him. *Id.* at 354. He did eventually pull over, obeyed the officer's order to drop his keys "which Plaintiff did onto the roof of the car through his open window." *Id.* at 351. The officer approached the car, grabbed one of Plaintiff's hands and "began to attempt to remove Plaintiff from the car." *Id.* The officer struggled with the plaintiff; a second officer arrived, pointed his gun at the plaintiff briefly, and then assisted the first officer. *Id.* Plaintiff said, "I'm coming, I'm coming," and the officers pulled him from the car. *Id.* The plaintiff fell "hard on his right side" fracturing his femur. *Id.*

The Sixth Circuit affirmed the federal district judge's determination that there was no constitutional violation, holding:

> Officers may use only an amount of force that is objectively reasonable under the circumstances, and there is no indication that the Officers did anything other than just that. Although Dunn unquestionably suffered a serious injury in the resulting fall, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

*Dunn,* 549 F.3d at 355, citing *Graham*, *supra,* 490 U.S. at 396. The Court took into consideration that "…the Officers… would have been reasonable in fearing the use of the car as a weapon," [*Id.* at 354 n 5], which was a factor at issue in the instant case, with Leavy failing to place the car in "park."

Finally, in *Rudlaff v Gillispie*, 791 F3d 638, 641 (6th Cir. 2015), the Sixth Circuit held that if someone is actively resisting arrest, which includes "physically struggling with, threatening, or disobeying officers" and "includes refusing to move

your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance" that "it is *not* excessive force for the police to tase someone (even multiple times)." *Id.* (citation omitted). As set forth above, Leavy can be seen pulling his hands away while Officer Jones was trying to handcuff him; and he certainly disobeyed numerous orders, including to turn over his license, and exit the vehicle. Furthermore, by continuing to yell and inflame the crowd, which surrounded the potentially weaponized car, he created a dangerous situation, and the use of force was reasonable and necessary to bring the situation under control.

2. Plaintiffs Fail to State a Claim for Violation of Their First Amendment Rights. (Count I)

Plaintiffs allege in Count I that their First Amendment right to protest has been infringed upon. "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014).

In this case, Plaintiffs allege their right to protest was infringed upon by the towing of Leavy's and Groff's cars, and by Leavy's detention, which acts they claim were done in order "to deter, punish, and chill Plaintiffs' constitutionally protected speech and assembly." Cmplt. ¶ 42; PgID.10. They allege Leavy was detained without probable cause, and the towing of Groff's car was "disproportionate." Cmplt. ¶ 93. Where, as here, infringement is alleged to have arisen out of detention by police, the existence of probable cause for the detention defeats a First

Amendment claim. *Hartman v. Thompson*, 931 F.3d 471, 484 (6th Cir. 2019); *see also, Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018)("[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."(quotes, citation omitted)); *see also, Gates, supra* (officers had probable cause to arrest plaintiff for wearing a full mask during a protest where a statute prohibited the wearing of such a mask, and thus qualified immunity barred plaintiff's First Amendment claim).

In this case, Leavy was traveling below the speed limit. The officer told him "[Y]ou were impeding traffic. There's a backup down Saginaw Street because you've gone five miles an hour in the lane of traffic." Leavy's passenger said: "I can't go the speed limit…." (Tisdale Exh. 1A 1:38-2:00). When Groff was advised by the officer that he was impeding traffic, Groff stated: "I'm not impeding traffic. I'm free-flowing with my hazards on." (Bryant Exh. 1B 0:37-0:47). Video footage evidences the traffic backup: the protesters were traveling north on Saginaw Street, on foot and in vehicles. Cmplt. ¶ 20; PageID.9. Officer Jones' body camera shows footage taken in front of Paul's Pipe Shop, which is located approximately 3 ½ blocks south of where Leavy was pulled over, and 2 ½ blocks south of Groff. (Jones Exh. 1D 0:24-0:36). Traffic can be observed to be backed up for at least one block south of that location (or a total backup of at least 4 ½ blocks). Officer Jones and another officer instructed the drivers of several cars and a bus (not Leavy nor Groff)

that they must drive the speed limit and turn off their hazards, otherwise they will be impeding traffic and their vehicles will be towed. Jones Exh. 1D 0:29-1:38. As Leavy and Groff were at or near the head of the procession to the north, the fact that they were traveling below the speed limit with hazards on supports that they were creating a backup, in violation of MCL § 257.676b(1)&(4) which provides that it is a civil infraction for a "person… [to] block, obstruct, impede, or otherwise interfere with the normal flow of vehicular… traffic upon a public street or highway in this state…. *Id.*[14] MCL § 257.602 provides: "A person shall not refuse to comply with a lawful order or direction of a police officer when that officer, for public interest and safety, is guiding, directing, controlling, or regulating traffic on the highways of this state." The police defendants in this case had probable cause to pull over both Leavy and Groff as part of their authority to regulate traffic flow, as they were impeding traffic, and there was no constitutional violation.

Further, Defendants do not allege that they were prevented from speaking or engaging in any other form of communication. As Plaintiffs admit, the police allowed the protest to proceed without any interruption.

[14] This is the statute referenced on one of the citations issued to Leavy. *See* Exh. 2.

**C. Plaintiffs Have Failed to State a First Amendment Retaliation Claim (Count III).**

In order to prove retaliation under the First Amendment, Plaintiffs must demonstrate that Defendants took adverse action against them which would deter a person of ordinary firmness from continuing to engage in the protected speech and that Defendants' actions were motivated at least in part by Plaintiffs' protected speech. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

As it happens, this is not the first time that Biggs-Leavy has asserted a retaliation claim against City officials, and that claim was dismissed for failure to plausibly allege that she would be deterred from further speech. See *Biggs-Leavy v. Lewis,* No. 23-cv-12123, 2024 U.S. Dist. LEXIS 46575 (E.D. Mich. Mar. 15, 2024), *aff'd*, 2025 U.S. App. LEXIS 3284 (6th Cir. Feb. 10, 2025). There, she alleged that her removal from a City Council meeting for disruptive behavior was in retaliation for her political activities. The Court dismissed the claim because:

> [T]he Sixth Circuit explained in *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) that "we are required to tailor our analysis under the 'adverse action' prong to the circumstances of this specific retaliation claim." 411 F.3d 712, 721 (6th Cir. 2005) (alteration in original) (quoting *Thaddeus-X*, 175 F.3d at 398). . . . The court concluded that "the appropriate formulation of the 'adverse action' prong is whether the alleged defamation would deter a criminal defense attorney of ordinary firmness from continuing to file motions and vigorously defend his client." *Id.* at 721.
>
> Applying *Mezibov*, . . . Plaintiff must have plausibly pled that the City's removal order would have deterred a community organizer of ordinary firmness from speaking at future city council meetings.

> Common sense dictates that ordinarily firm community organizers will speak, or at least attempt to speak, at municipal meetings regardless of whether they have been previously removed from a meeting of the same municipal body. Thus, Plaintiff fails to plausibly plead that the City took an adverse action against her. *Id.* at *20-21 (E.D. Mich. Mar. 15, 2024) (cleaned up, some internal citations and quotations omitted).

Here, it is even clearer than in *Biggs-Leavy*, *supra,* that any allegation that Plaintiffs would be deterred by alleged retaliatory acts is implausible as a matter of law. Plaintiffs acknowledge that they were political activists with a long history of "public advocacy, their association with political candidates opposing the current administration, and their participation in ongoing civil rights lawsuits." Cmplt. ¶ 44; PageID.11; *see also*, ¶¶ 25, 81, 82; PageID.6, 20. Those lawsuits and other "public advocacy"[15] preceded the events at issue here and followed the alleged retaliation alleged in Biggs-Leavy's retaliation lawsuit, yet they were not deterred from participating in the "protest" at issue here, nor in innumerable other conflicts with the City and its officials. Thus, the claim fails.

---

[15] Leavy alleges that he was retaliated against because of his "association" with Biggs-Leavy, Cmplt ¶ 30; PageID.8.

### D. Plaintiffs Have Not Stated a § 1985 Conspiracy Claim (Count II).

To plead a § 1985(3)[16] conspiracy claim, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. . . . The Supreme Court [also] requires that § 1985 claims contain allegations of "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

*Webb v. United States*, 789 F.3d 647, 672 (6th Cir. 2015).

Plaintiffs' conspiracy claim fails for at least three reasons. First, there is no underlying Constitutional violation, so there can be no conspiracy. *Rodrigues v. Martin Marietta Corp., Master Builders Div.*, 829 F.2d 39 (6th Cir. 1987).

Second, actions motivated by political animus, as Plaintiffs allege here, are not invidious class-based animus, and thus may not be the basis of a § 1985 conspiracy. "§ 1985(3) reaches only conspiracies targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework." *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022).[17] Political animus does not receive

---

[16] The Complaint does not specify which of § 1985's three subparts apply. Since subparts 1 and 2 are facially inapplicable, Defendants assume that Plaintiffs intended to assert a claim under § 1985(3).

[17] Plaintiffs do not allege racial based animus. To the contrary, they allege that

heightened scrutiny under an equal protection framework and thus cannot be the basis for a § 1985(3) conspiracy claim. See *Lee v. Miller*, No. 15-14255, 2017 U.S. Dist. LEXIS 212422, at *18 (E.D. Mich. Dec. 28, 2017) ("the term [protected class] unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors"). *See also, Farber v. City of Paterson*, 440 F.3d 131, 143 (3d Cir. 2006) ("§ 1985(3) does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation."); *Vieth v. Jubelirer*, 541 U.S. 267, 293, 124 S.Ct. 1769, 1785 (2004) (partisan gerrymandering is not subject to strict scrutiny).

Third, under the "intra-enterprise conspiracy doctrine," there can be no § 1985 conspiracy if the conspirators are "members of the same collective entity." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (internal quotations omitted). Here, all of the defendants are members of the same collective entity – the City of Flint, so cannot conspire. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 509 (6th Cir. 1991); *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019).

---

"Plaintiff Groff, a white male. . . was subjected to the same" allegedly wrongful conduct. Cmplt. ¶ 99.PageID.26.

**E. Plaintiffs Have Not Stated an Equal Protection/Selective Enforcement Claim (Count V).**

Plaintiffs style Count V as "Selective Enforcement/Equal Protection Violation." The gist of their claim is that they were denied equal protection because the City's traffic laws and ordinances were not enforced against other drivers. Cmplt. ¶ 78, PageID.19. In other words, Plaintiffs are asserting a single equal protection claim, not two different claims.

As explained in *Ziss Bros. Constr. v. City of Indep.*, 439 Fed. App'x 467, 475-76 (6th Cir. 2011) (some internal citations and quotations omitted):

> To prevail on an equal protection claim "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform,* 648 F.3d 365 [379 (6th Cir. 2011)]. Moreover, when a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff. . . must prove that the government's actions lacked any rational basis. "Where . . . no suspect class or fundamental right is implicated, governmental action subject to equal protection scrutiny under the rational basis test must be sustained if any conceivable basis rationally supports it." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio,* 430 F.3d 783, 790 (6th Cir. 2005) (internal emphasis omitted). . . .
>
> The rational basis test means that courts will not overturn government action unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.

Plaintiffs allege that their First Amendment rights were violated. If true, that is a fundamental right. However, as explained in above, Defendants have not

violated Plaintiffs' First Amendment rights, so that prong of the analysis does not apply. Plaintiffs also allege that they were denied equal protection based on their "known political affiliations or pending litigation against city officials." But, as explained above in § III C, political affiliation is not a protected class.

Thus, to prevail, Plaintiffs must plausibly allege that the enforcement of traffic laws during a political march was "unrelated to the achievement of any combination of legitimate purposes." That is so even if those traffic laws was inconsistently applied. Plaintiffs allege in conclusory terms that unidentified other drivers were treated differently, but the fact that enforcement is not universal does not violate the equal protection clause. Indeed, those decisions are a routine part of a police officer's activities – not every speeding driver is, or could be, ticketed. Thus, the equal protection claim fails.

### F. Plaintiffs Have Not Alleged a Cause of Action Against Defendants Mayor Neeley and Chief Terence Green.

Plaintiffs hinge their claims against Mayor Neeley on the allegation, made solely "upon information and belief," that he told a former City Council member that there would be "consequences" if Plaintiffs held their admittedly un-permitted protest. Similarly, allegations against Chief Green are that "upon information and belief," he ordered that Groff's vehicle be towed; in addition, Plaintiffs allege that the actions taken by officers vis-à-vis Leavy were "under the direction" of Green.

These allegations are insufficient in three ways. First, to the extent they are made on "information and belief," Plaintiffs concede that they do not know whether such statements were made/orders were given. Allegations made upon information and belief "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency. … These 'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502, 506 (6th Cir. 2013) *citing Iqbal*, 556 U.S. at 678 (internal quotation marks and alteration omitted).

Second, given the context in which such statement was made/orders were given - prior to or during an unlawful protest – it is more plausible to infer that they evidenced an intent to prevent dangerous situations – an out-of-control crowd/accumulation of traffic - than it is to infer that they evidenced an intent to violate any Plaintiffs' constitutional rights. In evaluating the sufficiency of a complaint's factual allegations, the court should reject the implausible explanation, where there is a more plausible one, and: "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar, supra,* at 682 (citation omitted). The Supreme Court agrees: "Factual allegations must be enough to raise a right to relief ***above the speculative level***." *Twombly*, 550 U.S. at 555 (emphasis added).

In *Flagstar,* the Sixth Circuit employed this rule to reject the less plausible explanation of a discriminatory motive for the bank's refusal to refinance a loan, where a "more obvious explanation" could be found:

> The factual matter in the complaint does not support an inference of discrimination. Danou's Iraqi origin does not by itself establish the requisite inference…. Banks often refuse to provide secured loans, just as they often refuse to provide unsecured ones. …Nor, in the face of these common sense explanations for Flagstar's conduct in the aftermath of the 2008 financial meltdown, does Flagstar's refusal to explain its decision help the plaintiffs make any headway.
>
> ***A more obvious explanation, indeed the most obvious explanation, for Flagstar's conduct was its understandable concern about repayment.***

*Id.* at 505 (emphasis added). The Sixth Circuit concluded that, "[T]he factual matter in the complaint does not support an inference of discrimination." *Id.*

To the extent the Complaint alleges that the Mayor and Chief Green were involved in a conspiracy to violate Plaintiffs' constitutional rights (see Count VI), as allegedly evidenced by "the timing of the protest response," the "coordinated deployment of law enforcement personnel in anticipation of the protest," and the towing of the vehicles (Cmplt., ¶¶ 87-88; PageID.22), those conspiracy theories are insufficient for the same reasons discussed above - the existence of the much more plausible explanation that the Mayor and Chief Green wanted to maintain order. (In any case, the Conspiracy claim also fails for the reasons discussed on § III C)

The allegations against the Mayor and Green are insufficient in a final, third way: they arise solely out of the alleged actions of the Individual Police Defendants in towing their cars and detaining Leavy. Plaintiffs have failed to plead "actions" against them constituting a violation of § 1983 by these Defendants. Plaintiffs' § 1983 claims must be dismissed as against these Defendants.

### G. The § 1983 Brought by Plaintiffs Biggs-Leavy and Brown Should Be Dismissed Because They Do Not Allege Cognizable Injuries.

Plaintiffs Biggs-Leavy and Brown do not allege they were the subjects of the police conduct at issue; their claimed "injuries" solely derive from the wrongs they claim were done to Leavy and Goff. Those indirect "injuries" are not cognizable as a matter of law, and thus they both lack standing and fail to state a claim.

Section 1983 "by its own term[s] grants the cause of action 'to the party injured'… [I]t is an action *personal* to the injured party." *Jaco v. Bloechle*, 739 F2d 239, 241 (6th Cir. 1984). "[O]nly the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (CA 6, 2000) .

Here, Plaintiffs collectively complain of "Defendants' actions – including the issuance of threats, *the selective enforcement of traffic laws, the towing of vehicles associated with protest organizers, and the use of force against peaceful*

*demonstrators* . . . " Cmplt ¶ 43; PageID.10-11 (emphasis added). They do not and cannot allege that Brown or Biggs-Leavy were the subjects of any of that alleged conduct. Plaintiffs allege, again collectively, that they "suffered significant harm, including physical injuries, emotional distress, reputational damage, and the chilling of their constitutional rights," including "lasting psychological trauma." ¶ 45; PageID.11. See also, Counts III & V, ¶¶ 61, 63, 78, 80, 82; PageID.15, 16, 19-21.[18]

### H. Plaintiffs Have Failed to State a Claim For Intentional Inflection of Emotional Distress (Count V).

Plaintiffs' intentional infliction of emotional distress ("IIED") claim[19] fails for two reasons. First, their allegations are not sufficient under Michigan law. Second, even if they were, they are barred by immunity under Michigan's Government Tort Liability Act ("GTLA").

#### 1. <u>Defendants' Alleged Acts and Plaintiffs' Alleged Injuries Do Not State a Claim for IIED Under Michigan Law</u>

The elements of IIED are: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Lewis v. LeGrow*, 258

---

[18] Count IV for "Excessive Force" is the sole count clearly brought solely on behalf of Leavy. If it were brought on behalf of all Plaintiffs, the same arguments apply.

[19] Whether the tort of IIED even exists in Michigan remains an open question. *See, Johnson v. Mount Pleasant Pub. Sch.*, 745 F. Supp. 3d 479, 522 (E.D. Mich. 2024) ("the modern Michigan Supreme Court has consistently avoided recognizing that intentional infliction of emotional distress exists as a cause of action.") (internal quotation omitted). The above argument assumes, without conceding, that it does.

Mich. App. 175, 670 N.W.2d 675, 689 (2003). Liability does not exist merely because "the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Roberts v. Auto-Owners Ins. Co*., 422 Mich. 594, 602-03, 374 N.W.2d 905, 908 (1985). Rather, "the conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* at 603 (citation omitted). Whether the alleged conduct meets that bar is "initially for the court to determine."" *Rudd v. City of Norton Shores*, No. 1:18-cv-124, 2021 U.S. Dist. LEXIS 194593, at *11 (W.D. Mich. Oct. 8, 2021)(dismissing claim for IIED pursuant to Rule 12(b)(6)); *see also Dunigan v. Thomas,* No. 22-cv-11038, 2023 U.S. Dist. LEXIS 31379, at *60-61 (E.D. Mich. Feb. 24, 2023)(same).

Here, Plaintiffs have not and cannot satisfy the first element - conduct that "goes beyond all possible bounds of decency." Under Michigan law, a police officer's actions during the course of arrest (and here, there was not even an arrest), even if done with excessive force, cannot support an IIED claim:

> "[W]hen courts have analyzed IIED claims brought by plaintiffs against officers based on conduct during the course of an arrest, the courts 'have not equated excessive force with outrageous conduct.'" . . . And courts throughout the Eastern District of Michigan have

> interpreted Michigan law so that an officer's excessive force cannot support an IIED claim. . . . The plaintiff has not cited a single case in which a police officer's excessive force—even the use of deadly force—has been found to support an IIED claim. In fact, Michigan law suggests the contrary.

*Parsons v. City of Ann Arbor*, No. 2:20-cv-10486, 2021 U.S. Dist. LEXIS 38527, at *21-22 (E.D. Mich. Mar. 2, 2021) (internal citations and quotations omitted). In any case, towing a car or forcibly removing a driver who fails to comply with repeated requests that he leave the car voluntarily are far from beyond all possible bounds of decency.

2. The IIED Claim Is Barred by Immunity

Section 7 of Michigan's Government Tort Liability Act ("GTLA"), MCL § 691.1407, bars the IIED claim.[20] The application of the GTLA is a question of law, *Beals v. Michigan*, 497 Mich. 363, 369 (2015). Further, Plaintiffs have the burden of pleading facts in avoidance of governmental immunity. *Kendricks v. Rehfield,* 270 Mich. App. 679, 681 (2006). "[T]he immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." *Nawrocki v. Macomb Cty. Rd. Comm'n*, 463 Mich. 143, 158, 615 N.W.2d 702, 711 (2000) (emphasis in original). A plaintiff has the burden of initially pleading in avoidance of governmental immunity. Further, immunity turns on the general

---

[20] It is unclear if Plaintiffs assert an "official capacity" claim on their IIED claim.

activity, regardless of whether the specific activity was lawful or unlawful, and regardless of animus, motivation, or intent. *Herman v. City of Detroit*, 261 Mich. App. 141, 144, 680 N.W.2d 71 (2004).[21]

The standards for immunity differ depending on the status of the defendant. Under GTLA §7(5), MCL § 691.1407(5), "the elective or highest appointive executive office of all levels of government" are absolutely immune from negligent and intentional torts if they are "acting within the scope of his or her legislative or executive authority." Mayor Neeley is self-evidently the highest elective official and Police Chief Green is likewise immune as the highest appointed official of the Police Department. *Petipren*, *supra*, 494 Mich. at 194 (Police Chief is absolutely immune). *See also,* *Nicklas v. Koelling,* No. 248870, No. 248871, 2004 Mich. App. LEXIS 3321, at *3 (Ct. App. Dec. 7, 2004), citing *Armstrong v. Ypsilanti Charter Twp*, 248 Mich. App. 573, 592-594; 640 N.W.2d 321 (2001).

---

[21] As noted above, the Complaint does not state that the IIED count is an official capacity claim, but if it is, it is barred by immunity. The official capacity claim is a claim against the City, and the City "is immune from tort liability if [it] is engaged in the exercise or discharge of a governmental function" MCL § 691.1407(1). "It is well established in Michigan that the management, operation, and control of a police department is a governmental function." *Odom, supra* at 464 n 6.

For the lower-level police-defendants, immunity for intentional torts, including IIED, is determined under "the law of intentional torts as it existed before July 7, 1986." MCL § 691.1407(3). Under that standard:

> governmental employees enjoy qualified immunity for intentional torts . . . if (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.

*Odom v. Wayne Cty.*, 482 Mich. 459, 461, 760 N.W.2d 217, 218 (2008). Scope of authority means "[t]he reasonable power that an agent has been delegated or might foreseeably be delegated in carrying out the principal's business." *Backus v. Kauffman*, 238 Mich. App. 402, 605 N.W.2d 690, 694 (1999) (internal quotations omitted). Traffic and crown parade control are squarely within the scope of authority. Further the actor's subjective state of mind'" or "'motive or intent has no bearing on the scope of his or her executive authority.'" *Hartzler Excavating, LLC v. Quattrin*, No. 351425, 2021 Mich. App. LEXIS 430, at *6 (Ct. App. Jan. 21, 2021), quoting *Petipren*, *supra* at 206. Discretionary acts "require personal deliberation, decision and judgment." Based on the allegations in the Complaint, the Individual Police Defendants' conduct was plainly discretionary, and subparts (1) & (3) of the *Odom* standard are satisfied.

The second, "good faith" element is also satisfied. The facts alleged as to each of the Officer Defendants were discussed at length above and will not be repeated.

It suffices to say that they are gossamer thin (e.g. that Sargeant Tisdale's name appeared on a traffic citation, Cmplt ¶ 35, PageID 9) fall woefully short of establishing bad faith. Thus, the Individual Police Defendants are entitled to immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6), and award Defendants their costs and reasonable attorneys' fees incurred in this matter. Defendants also request such other or additional relief as this Court deems appropriate under the circumstances.

*Respectfully submitted,*

BUTZEL LONG, PC

By: */s/ Sheldon H. Klein*
Frederick A. Berg (P38002)
Sheldon H. Klein (P41062)
Laura S. Faussié (P48933)
150 W. Jefferson Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com
klein@butzel.com
faussie@butzel.com

Dated: August 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Sheldon H. Klein*
Sheldon H. Klein (P41062)
klein@butzel.com